## M'Donald and Wife *v.* Walgrove and others.

In the construction of a will, if it be impossible according to established principles, to give effect to the whole apparent intent of the testator ; the construction must be adopted which will carry out the principle design of the will, if that be legal ; and whatever is by law inconsistent with such design, must yield.

A testator devised all his real estate to his wife, *to be at her entire disposal*, but if any part thereof remained unsold at the time of her death, he devised the same to his children and grandchildren. He died before the revised statutes.

*Held*, that the wife took the entire fee simple ; and that the subsequent limitation over, being repugnant to the gift, was void.

It cannot be upheld as a remainder, because as the law then was, a remainder could not be limited on a fee : nor as an executory devise, because, it was defeasible by the act of the first taker, contrary to the essential principle of such a devise.

Feb. 5 ; Feb. 6, 1844.

THE facts in this case appear in the opinion of the court.

*O. H. Platt,* and *J. N. Reynolds,* for the complainants.

*J. A. Morrill* and *E. Morrill,* for the defendants, J. D. Jones, and wife.

*W. Lowerre* and *B. W. Bonney,* for the executors of Hester Walgrove.

THE ASSISTANT VICE-CHANCELLOR.—The question in this case arises upon the will of Samuel Walgrove, who died on the sixth of February, 1819.

He devised as follows :

" First. After all my just debts be paid and discharged, I give and bequeath unto my beloved wife Esther Walgrove, all my personal estate, goods and chattels ; I also devise unto her the said Esther, all my real estate, the same to be at her entire disposal ; but should any part thereof remain unsold at the time of her decease, I devise the same to those of my children who are now living, (viz., George Azarias, John, William, Stewart and Eliza,) which may then survive, and to the heirs of those of them which may have deceased in the interim, to be equally divided amongst my said children, share and share alike, in such manner as my executors hereafter named, shall believe to be most for the advantage of my said children and their heirs, whether to sell and divide the proceeds or otherwise."

On reading this will, no person can doubt but that the testator intended to give to his wife the absolute control of the real estate during his life to be at her entire disposal, which includes not merely the sale of it, but the unrestricted disposition of the proceeds ; and that if any part of it remained *unsold,* then such part was to be divided among his children equally, either in the land or its proceeds, as his executors should deem most advantageous.

If this intent can be carried into effect according to the rules of law, the courts are bound to construe the will accordingly.

If, however, it is impossible, according to established princi-

ples of construction, to give effect to the whole apparent intent of the testator, the construction must be adopted which will carry out the principal design of the will, provided that be legal ; and whatever is inconsistent by law with such design, must yield.

In this case, the first and principal object of the testator was to provide for his wife. He has manifested this by placing the whole real estate at her absolute disposal. If her necessities or her wishes prompted her to sell the real estate, the will gave to her that power in the most ample manner. This is conceded on all hands. And it is also conceded, that the devise to the wife, unless it be controlled or restrained by the subsequent provision in case the estate remained unsold, was sufficient to vest her with the title in fee simple. So far as this main object of the will is concerned, the testator has unquestionably used sufficient and proper words to accomplish it.

A part of the real estate remained unsold at the death of his widow, and we are to inquire whether his intention as to what should ensue in that event, can be carried into effect.

The *absolute disposition* of the estate in fee having been given to the wife, I do not see how it is possible to resist the consequence, that she took the fee by the devise. The disposition of it is not given to her by way of power. It is for her sole benefit, and without control or restriction.

This being so, the subsequent provision for the children cannot be sustained as a remainder, contingent upon the event of her leaving the lands unsold at her death. A contingent remainder cannot be limited upon an absolute estate in fee simple. *Pells* v. *Brown*, (Cro. Jac. 590 ;) *Preston* v. *Fennell*, (Willes R. 164.)

If supported at all, it must be supported as an executory devise. And here we are met by an inflexible rule of law which prevailed at the death of the testator, viz; that an executory devise cannot be prevented or destroyed by any alteration whatever in the estate out of which, or after which, it is limited. (*Fearne on Exec. Devises, by Powell,* 56 ; 6 *Cruise Dig.* 444, tit. *Devise,* ch. 17, § 13.) Here the whole devise to the children was made defeasible, by the disposition of the property by

the widow of the testator, and by consequence, it cannot be deemed an executory devise.

These principles have been steadily upheld by the courts in this state.

In *Jackson ex dem. Brewster* v. *Bull*, (10 Johns. R. 19,) the testator first gave the premises to his son Moses, and his heirs and assigns forever. In a subsequent part of his will, he declared that if Moses should die without issue, the property he died possessed of should go to another son and his lawful issue. It was held by the Supreme Court, that the limitation over was void, as being repugnant to the absolute ownership of the property given to Moses by the will.

The same was held upon the construction of the will of the Earl of Stirling.

By that will, Lord Stirling devised all his real and personal estate whatsoever to his wife Sarah, to hold the same to her, her executors, administrators, and assigns ; but in case of her death, without giving, devising, and bequeathing by will or otherwise, or assigning the said estate or any part thereof, then he devised all such estate or such parts thereof as should remain unsold, undevised, &c., unto his daughter Catharine, to hold the same to her and her executors, administrators, and assigns, &c.

His will first came before the Supreme Court in *Jackson ex dem. Livingston* v. *De Lancey*, (11 Johns. R. 365,) but the court did not pass upon the devise to Lady Stirling.

When that case was before the Court for the Correction of Errors, (13 Johns. R. 537,) Chancellor Kent, who delivered the only opinion in that court, speaks briefly of this devise, and says that the whole estate in fee was thereby vested in Lady Stirling. He affirmed the grounds taken by the Supreme Court in the case when before that court.

In *Jackson ex dem. Livingston* v. *Robins*, (15 Johns. 169,) Lord Stirling's will was again before the Supreme Court, and it was then held that the devise carried an estate in fee simple absolute to Lady Stirling, and that the limitation over to Mrs. Duer was not a good executory devise. It was assumed by the court that the Court for the Correction of Errors had ex-

pressly decided the point on this will in the previous case in 13 Johns. R. 537, and thereby sanctioned the decision in *Jackson* v. *Bull.* But when the suit against Robins went to the court of last resort, (16 Johns. R. 537, 583,) Chancellor Kent said that the decision of the court in *Jackson* v. *De Lancey,* did not rest at all upon this point. And it is to be observed that Van Ness, J., in the suit against Robins, said he would have held that Lady Stirling did not take a fee, did he not feel bound by the decision of the Court of Errors in the previous case.

When the case of *Jackson* v. *Robins,* reached that court, the point received an elaborate investigation by the counsel, and by the chancellor in delivering the opinion of the court. And if any thing could have shaken the force of the rule in question, it would have been overturned by the powerful argument of Lady Stirling's learned and eloquent grandson on that occasion. The rule was fully sustained by the learned chancellor, who has added the weight of his high authority to the decisions of the Supreme Court upon the point. There was another decisive question in *Jackson* v. *Robins,* on which the chancellor concurred with the Supreme Court, so that it is not clear that the Court of Errors has ever passed upon the effect of Lord Stirling's devise.

But the opinion of Chancellor Kent, in that case, demonstrates most clearly, that by the established law in England and here, the devise over to the children of Samuel Walgrove in the will under consideration, cannot take effect. Indeed the only authority which I have discovered, that throws a doubt upon the point, is a *dictum* of Lord Kenyon in *Beachcroft* v. *Brome,* (4 T. R. 441,) stated also in *Fearne on Exec. Devises,* (by Powell,) 81, note a.

In the recent case of *Helmer* v. *Shoemaker,* (22 Wend. 137,) the Supreme Court have again decided the same point that was before them in 10 and 15 Johns. before cited, and in the same manner.

Thus I find the doctrine well settled, that an absolute ownership or capacity to sell in the first taker, and a vested right by way of executory devise in another, which cannot be af-

fected by such alienation ; are perfectly incompatible estates and repugnant to each other, and the latter is to be rejected as void. And when the testator in this case, after giving to his wife the estate in fee, attempted to engraft upon it an executory devise or limitation over to his children, in such part of it as she left unsold ; he did what was incompatible with his other and principal intention, and which the courts must of necessity reject as contrary to the rules of law, and inoperative.

The real estate described in the bill therefore, on the death of Hester Walgrove, went to her executors in trust, or descended to her heirs subject to the execution of the powers in trust created by her will.(*a*)

As the heirs or devisees of William S. Walgrove are not made parties, any declaration to this effect cannot prevent them from litigating the question hereafter. And the omission of the grandchildren *in esse* of Hester Walgrove, who under the will are ultimately to take the *corpus* of the estate in fee, renders the bill defective so far as it seeks to procure a declaration that the property did not vest absolutely in Hester Walgrove.

The bill is not framed for the purpose of rescinding the purchase made by the complainant ; and if it were, there is no proof to charge the executors of William S. Walgrove, with the sum alleged to have been paid to him as his portion of the purchase money. I think the proper course will be to dismiss the bill, without prejudice to the complainant's remedy upon his deed, or for the recovery of the money paid by him, or otherwise upon the failure of the title conveyed to him.

The parties have labored under a mutual mistake as to their rights, and each must defray his own costs.

---

(*a*) See *Byng* v. *Lord Strafford,* (5 Beavan, 558 ;) *Aspinall* v. *Andrus,* (9 Lond. Jurist Rep. 211.—Exch. Mich. T. 1844.)