CONVERSE, administrator, &c. *vs.* KELLOGG and others, executors, &c. and others.

A testator, by his will, which took effect in 1836, after sundry bequests to his wife, children, and others, devised as follows: " I give and bequeath all the rest and residue of my estate, after payment of my debts, funeral charges and legacies above mentioned, unto my said children, (naming them,) their heirs and assigns for ever, equally to be divided between them share and share alike, and to the descendants of such of my children as shall have died, in equal portions, that is, such descendants to take the same to which their ancestor would have been entitled if living ; but no division to be made until ten years after the death of my said wife." By an agreement made between the plaintiff C., and his wife M. A. C., (his intestate,) who was a daughter of the testator, and the executors on the 4th of May, 1840, C. and his wife in consideration of $7000, a part of the residue of said estate then advanced to them by the executors, sold and transferred to the executors all their share in the residuary portion of the estate belonging to them or either of them, under the will of the testator or otherwise, to have and to hold till a final division of the estate should be made, when the sum then paid, with interest, was to be deducted from their share. And they covenanted that they would not, during the life of the widow, claim, demand, or sue for their share of the estate, nor do any act to impair the will of the testator. In a suit by C., as administrator of his deceased wife, against the executors, heirs at law, and next of kin of the testator, for an account by the executors, and to recover his wife's share of the residuary estate ;

*Held,* 1. That by the will, the children of the testator, living at his death, and the descendants of those who had then died, took a vested interest in the residuary estate, at the death of the testator.

2. That the devise both of the real and personal estate was valid, as vesting a present interest in the beneficiaries.

3. That the condition annexed to the devise, that no division should be made until ten years after the death of the widow, was void, as to the personal estate, as suspending the absolute ownership thereof for a period beyond the time prescribed by the statute.

4. That the covenant or agreement of May 4th, 1840, was void.

5. That C., the plaintiff, was entitled to an account from the executors, in respect to the rents and profits of the real estate, from the death of the testator, during the life of his intestate, and a full account in relation to the personal estate.

THIS action was brought by the administrator of Mary Ann Converse, a daughter of Daniel Kellogg deceased, against the executors, heirs at law and next of kin of Mr. Kellogg, for an accounting by the executors, and to recover the share of the

plaintiff's intestate of a large part of the estate alledged to have been undisposed of by the will of the testator. Mr. Kellogg died in 1836, leaving a large estate, real and personal, having first made his will, which, after sundry bequests to his wife, children, and others having claims upon his bounty, contained the following clause : " I give and bequeath all the rest and residue of my estate, after payment of my debts, funeral charges, and legacies above mentioned, unto my said children, (naming them) their heirs and assigns for ever, equally to be divided between them share and share alike, and to the descendants of such of my children as shall have died, in equal portions, that is, such descendants to take the same to which their ancestor would have been entitled if living ; *but no division to be made until ten years after the death of my said wife.*" The widow of the testator was still living, and the plaintiff claimed that the residuary clause quoted above was void as suspending the power of alienation of the real estate, and the absolute ownership of the personal property, for a longer period than during the continuance of two lives in being at the death of the testator. The executors insisted upon the validity of the residuary clause, and also insisted, as a bar to this action, upon an agreement made by the plaintiff and his wife (his intestate) on the 4th of May, 1840, by which, in consideration of $7000, a part of the residue of said estate then advanced to them by the executors, they sold and transferred to the executors all their share in the residuary portion of the estate belonging to them or either of them, under the will of said Kellogg or otherwise, to have and to hold till a final division of the estate should be made, when the sum then paid, with interest, was to be deducted from their share ; and they covenanted that they would not during the life of the widow of said Kellogg, claim, demand, or sue for their share of the estate, nor do any act to impair the will of said Kellogg. The cause was tried before Pratt, Justice ; who decided that the residuary clause in the will was void, and that the real and personal estate mentioned in that clause was undisposed of by the will, and descended to the heirs and next of kin of the testator, according to the statute ; and that the agreement of the plain-

tiff and his intestate, relied upon by the defendants, was void; and directed an accounting in pursuance of the prayer of the complaint. From this decision and the judgment thereon the executors appealed to this court.

*P. Bronson,* for the appellants,

*G. F. Comstock,* for the respondents.

*By the Court,* ALLEN, J. One question made upon the argument, and to be determined, is whether the descendants of the children of the testator, who by the terms of the will were to share in the residuary portion of the estate, were the descendants of those children who should die before his death, or of those who should die at any time before the time appointed for the final division of the estate. For if the bequest is to the children who shall be living at the expiration of the ten years after the death of the widow of the testator, and the descendants of those who shall die before that time, to the exclusion of those in esse at the death of the testator, it is clearly invalid. The estate would vest in the devisees at the time contemplated for the division, and not before; and until that time the absolute power of alienation of the real estate, and the absolute ownership of the personal property, would be suspended. And such suspension not being limited to the duration or continuance of two lives in being at the creation of the estate, or death of the testator, the devise would, for that reason, be void. (1 *R. S.* 723, §§ 14, 15. *Id.* 773, § 1. *King* v. *James,* 16 *Wend.* 61. *Coster* v. *Lorillard,* 14 *Id.* 265. *Irving* v. *DeKay,* 9 *Paige,* 521.) If the language of the will imports a present bequest of property to be distributed at a period subsequent to the death of the testator, those persons in esse at the time of his death, answering the description of the devisees named in the will, will take vested interests, subject, however, to open and let in others who may come into being and belong to the class at the time appointed for the distribution. (*Collin* v. *Collin,* 1 *Barb. Ch. Rep.* 630.) Whether the rule can apply to the devise of a

chattel may be questionable. For of that it is said there can be no remainder which may vest and afterwards open and let in after-born children. That a devise of chattels would be contingent until the time appointed for distribution in cases where a similar devise of real estate would be held to vest a present interest at the death of the testator, subject to open and let in after-born children. (*Dingley* v. *Dingley*, 5 *Mass. Rep.* 535.)

The intent of the testator is to be gathered from the words employed by him; and a literal construction should be put upon the clause, so as to uphold it if possible, and carry into effect that intent. If the words used are ambiguous, and susceptible of more than one interpretation, that interpretation should be given them which will uphold the devise consistently with the rules of law and the manifest intent of the testator, *ut res magis valeat quam pereat.* (*Co. Litt.* 36 *a.*) The will speaks at the death of the testator; and there is nothing in the language of the bequest indicating an intent to postpone the vesting of the estate in the beneficiaries to a future period. The party to take under a will should, if possible and consistent with the terms of the will, be determined at the death of the testator; and the estate should then vest in interest, unless there be clear evidence of an intention to the contrary. (*Wrightson* v. *Macauley*, 14 *Mees. & Wels.* 214; *S. C.* 4 *Hare,* 487. *Dor dem. Winter* v. *Perrott*, 3 *M. & Scott,* 586.) If the clause is read without reference to the last paragraph, postponing the final division of the estate, no question can arise as to the palpable intent of the testator to vest the residue of his estate not before disposed of, at once, in his children living at the time of his death, and the descendants of such as had before then died. There is no other time to which the vesting of the estate in the devisees can be referred. No intermediate estate is carved out, no trust is created. The bequest is direct, absolute, and unconditional. It is true that upon the idea that the testator is speaking at the time of his death, the language employed to designate the descendants of his children who shall take the share of their ancestor, is not strictly accurate, in the view now taken of the devise. *Actually* speaking at that time, the testator would

Converse *v.* Kellogg.

doubtless have said "and to the descendants of such of my children as *have* died," instead of "*shall have* died;" or would have named the children who had died, and whose descendants were to take under the will. But in construing the will to discover the intent rather than the literal and grammatical construction of sentences, we must remember that in fact the language of the testator was uttered several years before his death; and speaking at that time, and intending the bequest to take effect at the time of his death, the language employed was proper to designate as objects of his bounty the descendants of such of his children as should die before his death. But whether the sentence is strictly grammatical is not material. Neither false English nor bad latin will vitiate a deed or will, when the meaning of a party is apparent. (2 *Bl. Com.* 379.) Had the testator, omitting the last clause specifying the time for a division, written out the sentence in full, so as to leave no room for construction, the clause under consideration would have read "and to the descendants of such of my children as shall have died at the time of my decease." The addition of the clause "but no division to be made until ten years after the death of my said wife," so far from conflicting with this construction of the will, in my judgment strengthens and confirms it. It evinces that the testator distinguished intentionally between the vesting of the estate in interest in the beneficiaries, and the actual distribution of the property among them; and while he intended that one event should take place at his death, he was anxious to postpone the other to a future period. (*See Collin* v. *Collin, and Dingley* v. *Dingley, supra; Cook* v. *Cook,* 2 *Ves.* 545; *Winslow* v. *Goodwin,* 7 *Met.* 363; *Weston* v. *Foster, Id.* 297.) By the will, therefore, a present interest in the residuary estate vested in the beneficiaries at the death of the testator, and the clause disposing of that part of the estate is valid, unless it is vitiated by the restriction imposed upon the final distribution. It is well settled that if effect can not, consistently with the rules of law, be given to the entire will, or an entire provision in a will, any part of it may be sustained which is conformable to the rules of law, and which can be separated from the residue

without doing violence to the testator's general intention. (14 *Wend.* 265. 16 *Id.* 61. *Darling* v. *Rogers*, 22 *Id.* 483. *Kane* v. *Gott*, 24 *Id.* 641.) And in this case the bequest and the directions for distribution are distinct provisions, having no necessary connection with each other. The one can stand without the other, and the general intention of the testator in the disposal of his estate, can be carried into effect, although his directions to delay the final division should be illegal, and consequently invalid in whole or in part. (*Irving* v. *De Kay*, 9 *Paige*, 521. *McDonald* v. *Walgrove*, 1 *Sand. Ch. Rep.* 274.) It is not material to inquire whether the restraint imposed upon the division of the estate, so far as it is applicable to the real estate of the testator, is repugnant to the estate created by the devise. It by no means follows that the power of alienation is suspended because the right of immediate partition and division is withheld. (*Gott* v. *Cook*, 7 *Paige*, 521.) The estate vested immediately at the death of the testator, subject to a power of sale in the executors. The executors acquired no estate in the real property. They were not authorized expressly, or by implication, to receive the rents and profits for any purposes of the will. (*Vail* v. *Vail*, 4 *Paige*, 316.) But whether the real estate was disposed of by the will, and vested immediately in the devisees, or descended to the heirs at law, who are the same persons, and entitled in the same proportion, whether they take as heirs or devisees, is immaterial; as in either case the rents and profits, from the death of the testator, belonged to them and not to the executors. The plaintiff's intestate was therefore entitled to her proportion of the rents from the time of the death of her father; and the plaintiff, as her representative, is entitled to an account of the rents during her lifetime. The defendants admit that they have occupied the real estate and received the rents and profits as executors. Therefore they must account as such, although but for such admission their occupation would, unexplained, be referred to another title. But for the period since the death of the wife, the plaintiff, as her representative, is not entitled to an account in respect to the real estate. His claim, if he has any to the rents

Converse *v.* Kellogg.

after the decease of his wife, is in his own right as tenant by the curtesy, and in that character no claim is made in this action. In relation to the personal estate the question is different, and the plaintiff is not entitled to an account in respect to it, unless it vested absolutely in the devisees at the death of the testator, and the clause prohibiting a division until the lapse of ten years after the death of the widow, is void. The widow is still living, and the time for distribution, according to the terms of the will, has not yet arrived. If the clause prohibiting the division of the estate is repugnant to the gift, it is void, and must be rejected. (4 *Kent's Com.* 131. *Morton* v. *Reed,* 4 *Simons,* 141. *Schermerhorn* v. *Negus,* 1 *Denio,* 448.) By 1 *R. S.* 773, § 1, it is provided that "the absolute ownership of personal property shall not be suspended by any limitation or condition whatever for a longer period than during the continuance, and until the termination of not more than two lives in being at the date of the instrument containing such limitations; or if such instrument be a will, for not more than two lives in being at the death of the testator.

If the clause of the will now under consideration suspends the absolute ownership beyond the time prescribed by this act, it is void. If absolute ownership means nothing more than a vesting of the property, with a right of alienation, without the right of possession, then the restriction upon a division of the estate is not in conflict with the statute. But if the term used in the statute includes not only the property but the right to actual, immediate and unconditional possession, then the clause is repugnant to the statute and is void. For beyond all question the condition contemplates the possession of the personal property by the executors in whom it vested, as incident to their office, until the time fixed for the distribution. ( *Williams on Executors,* 398.) Until that time there could be no ownership in severalty by the devisees of any part of the property. All would have an interest in every part, but no one would be entitled to any separate part to the exclusion of the others; and neither any nor all of the devisees would be entitled to the possession of the personal estate to the exclusion of the executors. ' The

Converse *v.* Kellogg.

language of the statutes to prevent the undue accumulation of real and personal property, is somewhat different; and this difference may perhaps, in part, be attributed to the different properties of the subjects of legislation. Personal property is strictly and technically the subject of absolute ownership, while, in theory at least, real property is not, but is merely the subject of an estate. (1 *R. S.* 718, § 1. 3 *Kent,* 378. *Williams on Pers. Prop.* 7.) But this does not aid us in determining the meaning of "absolute ownership," as used by the legislature. The word "absolute" was doubtless used as the opposite of "conditional," and in the same sense as "perfect." It signifies without any condition or incumbrance. (*Bouv. Law Dict.*) To constitute a perfect title to real estate there must be the union of actual possession, the right of possession, and the right of property. (4 *Kent,* 373.) Can the title to personal property be said to be perfect, or the ownership "absolute," while one person is the general owner, and another has the possession and the right of possession? In this case the executors had a qualified property in the personal estate, and the right to the possession for the purposes of the will, and if the condition under consideration is valid until the final division among the devisees while the latter were the general owners and entitled to the ultimate possession, the ownership of the devisees was far from absolute. The right of the executors to the possession, and the restraint upon division and actual possession was an encumbrance upon the ownership of the devisees. "Ownership" is the right by which a thing belongs to an individual, to the exclusion of all other persons. In this case, if the condition in restraint of division is valid there are two classes of owners, one general the other special; neither having the absolute ownership. I think by the clause in question the absolute ownership of the personal estate was suspended for a term longer than during the continuance of two lives in being at the death of the testator, and that such condition was void. Again; the appointment of a future and distant time for the final division of the estate necessarily contemplated an accumulation of the interests and profits in the mean time; and as such accumula-

Converse *v.* Kellogg.

tion was not for any of the purposes allowed by law, the condi-tion to which such accumulation was a necessary incident must be void. (1 *R. S.* 773, §§ 3, 4.) The counsel for the appellants relies upon *Hone* v. *Van Schaick,* (20 *Wend.* 564;) but the decision in that cause was merely that when a testator gave to each of his grandchildren who should be living at the time of his death $6000, to be paid upon their attaining the age of 21, or marrying, such payment, however, to be subject to the approbation of the parents of the grandchildren, and the time of payment to be fixed by them, the legacies were vested, and not contingent, and that the power given to the parents did not prevent the vesting of the legacies. Judge Bronson says that "the power of disposing of the property could at the most only be suspended for a single life;" and this whether the legacies were vested or contingent, and upon this ground is the decision based. What the judge says further must be read in reference to the facts of that case. He did not consider, or undertake to decide, what was the meaning of the term absolute ownership, as used in the statute, and took no distinction between the statute's application to real and personal property, but treated both as prohibiting restraints upon the power of alienation merely.

The covenant of May 4, 1840, can not avail the defendants in this action. If there were no other objections to its validity, the entire absence of consideration would invalidate it. It was attempted, upon the argument, to uphold it upon the ground that payment to the plaintiff of a portion of the fund belonging to him, without suit, was a benefit to him and a trouble or injury to the defendants. But the benefit to one party or the injury to the other, which can avail as a consideration to support an agreement, must be a benefit to which the party is not entitled except as a consideration of his undertaking, or the injury must be to the legal rights, not to the wrongful claims, of the promissee. If I am right in my conclusions, the money paid to the plaintiff was his, of right, and the payment could not in the nature of things be a legal injury to the executors. As well might it be insisted that the payment of part of a debt overdue, by the debtor, was a valid consideration for an agreement to postpone.

the payment of the residue, and no one would insist that such was the law. (*Pabodie* v. *King*, 12 *John.* 426.) This was not a compromise of a doubtful claim.

The conclusions to which I have arrived are 1. That by the will the children of the testator living at his death, and the descendants of those who had then died, took as devisees a vested interest in the residuary estate at the death of the testator. 2. That the devise, both of the real and personal estate, is valid as vesting a present interest in the beneficiaries. 3. That the condition annexed to the devise, that no division should be made until ten years after the death of the widow, was void as to the personal estate, as suspending the absolute ownership thereof for a period beyond the time prescribed by statute. 4. That the covenant or agreement of May 4, 1840, is void. 5. That the plaintiff is entitled to an accounting in respect to the rents and profits of the real estate from the death of the testator during the life of his intestate, and a full account in relation to the personal estate.

I think the decree should be modified to conform to these conclusions, and with such modifications, affirmed. The question of costs upon this appeal to be reserved until the final hearing of the cause.

