Van Hanswyck v. Wiese.

MARTIN I. VAN HANSWYCK and another, *appellants, vs.* PAUL WIESE and others, *respondents.*

Where a testator, being too weak to subscribe his name, at the end of his will, two marks were made, in the proper place, opposite a seal, with a pen held in the fingers of the testator, and his hand guided by another, which marks he declared it to be his wish should be understood to be his signature; *Held* that this was a valid subscription of the will, by the testator, within the meaning of the statute.

Van Hanswyck v. Wiese.

APPEAL from a decree of the surrogate of the county of New York admitting the will of William Nicolas Van Hanswyck to probate.

*Henry Scharff*, for the appellants.

*Mr. Blackman* and *E. F. Hall*, for the respondents Wiese and wife.

*C. Schaffer*, for Katrine Wolff, legatee.

LEONARD, J. This case comes up on an appeal from a decree of the surrogate admitting the will of William Nicolas Van Hanswyck to probate. The questions raised relate to the execution of the will, and the capacity of the testator; and there is also an allegation of undue influence. The testator was near his death, and physically very weak at the time the will was presented to him for signature. His sight had failed, and when he was raised in bed for the purpose of executing the will, he was in a fainting condition, so that it became necessary at once to place him in a recumbent position. And the will appears to have been executed, so far as it was executed, while the testator was in that condition. His hand had lost its power, so far that he was unable to hold his pen, or guide it so as to make any mark without assistance. The last effort about its execution, was an attempt to make a cross, with the aid of the gentleman who guided his hand, in which he appears to have failed to make more than half of the marks requisite for that purpose, in consequence of his physical inability, even with assistance. His mental capacity was, however, believed to be clear, by the attending witnesses.

The name of the testator was not affixed at the end of the will. At the place where his name was intended to be signed, was a seal and two characters, one in the form of a cross, and the other designed perhaps as one stroke or mark in another cross. These marks were made while the pen was held in the fingers of the testator, and his hand guided with

assistance. The testator said the seal was his, and on being asked if he wished the two marks to be understood as his signature he said "I do," or "it is." He then declared the instrument to be his will, and requested two gentlemen who had aided him in its execution to become subscribing witnesses, which they did in the presence of the testator.

The statute requires a will to be subscribed by the testator at the end. In this case the testator has affixed some characters in the proper place, which he declares it to be his wish shall be understood to be his signature. I see no difficulty in regarding this as a subscription of the will by the testator, within the meaning of the statute. The construction insisted on would require that the testator should write his own name legibly at the end of the will. The statute is substantially complied with where the testator affixes, in the proper place, with his own hand, characters which he declares to be his signature. The fact that the testator was aided in directing the movements of his hand and pen does not injure the execution.

In respect to the capacity of the testator I do not think the question to be so clear. The instructions to the gentleman who drew the will, appear to have been given to him, partly at least, and I think chiefly, by communications in German, which it does not appear that he understood, made between the testator and his daughter and son-in-law, and by them, or one of them, translated and conveyed to the draughtsman. It was then read over to the testator, sentence by sentence, and he gave his assent to it, and the lawyer thinks he understood it. Now whether he did understand it is one of the main facts, in respect to the capacity of the testator ; and the case stands in this respect upon the opinion of this witness. There is some intrinsic evidence that the testator did not understand the will as read to him. A daughter living in Europe is twice called a son in the will, and the name is written as the name of a man, Johan Jacobi Van Hanswyck. I do not know that it is singular that the

Van Hanswyck *v.* Wiese.

name, which very nearly resembles that of the daughter intended, did not attract the attention of the Germans, who heard it read by another, of a different nationality, but the fact that a daughter is called a son, without notice by the testator, it may be, indicates a failing consciousness, not wholly consistent with a disposing mind.

I see no particular reason to suspect the existence of any undue influence exercised by any one over the testator in respect to his will; but having come to the conclusion that the question of the competency of the testator should be submitted to a jury, there is perhaps sufficient in the circumstance that the daughter and son-in-law were the mediums through which the directions, so far as they were given in German were communicated to the draughtsman, to require that the question of undue influence should also be submitted to a jury.

For this purpose, the decree of the surrogate should be reversed, and a trial should be had before a jury, the costs of the appeal to abide the event.

INGRAHAM, P. J. concurred.

SUTHERLAND, J. I think the will was sufficiently executed, in point of form.

If the evidence as to the competency or capacity of the testator, and as to undue influence, could be considered as contradictory, perhaps there should be a jury trial, but I do not see any material contradiction in the evidence on these points.

I think the evidence did not leave any reasonable doubt that the testator at the time of the execution of the will had sufficient capacity, and that the will was executed without any undue influence.

I think the decree of the surrogate should be affirmed.

Decree of surrogate reversed, and a trial ordered to be had, before a jury.

[NEW YORK GENERAL TERM, September 19, 1865. *Ingraham, Leonard* and *Sutherland,* Justices.]