By the Court.—Curtis, J.
The jury found that there was such an agreement made September 5, 1.867, between the parties, as was testified to by the plaintiff, and by which he was to be compensated by the defendant for the loss of earnings, in case he should be suspended by the Board. The measure of his compensation was to be an amount, equal to his average business for the preceding year, with ten per cent added.
The jury did not allow the plaintiff as much as he would have been entitled to under the agreement, even if his earnings from commissions for the eight months ($13,145) had been all that he had earned during the previous year. They appear to have considered that during the other four months of the previous year the plaintiff earned nothing. As the plaintiff’s profits on speculations in his stock-business during the eight months was excluded from the consideration of the jury as forming any basis for the measurement of damages, and their attention in that respect limited to the amount of earnings from commissions on regular business, there is not much force in the objection, that for aught that appeared, the plaintiff’s previous *365 four months more than exhausted profits by losses. No questions were asked the plaintiff on cross-examination, in regard to his business during the preceding four months, and his evidence as to his earnings during eight months was received without objection.
The defendant claims that his promise was involuntary, and was made under a species of duress. That is, that it was made under the pressure of a wrongful demand, and to induce the plaintiff to perform his legal obligation. The testimony shows, that when the plaintiff reminded the defendant of what he knew, as-, to the plaintiff’s liability to suspension in case a further deposit was not made, the defendant, of his own, accord, made to the plaintiff a new proposition,, not merely in reference to not putting up the margin, b.ut that he should not appear before the arbitration com-, mittee of the Board, when summoned to do- so, by Currie, Martin & Co., and that upon plaintiff’s thus acting, he would not only protect him from loss, but if he was suspended from the Board, would pay him¡ at a certain rate for his time during the period of such, suspension. To this proposition the plaintiff acceded,, and fulfilled the new contract thus created,.
It is argued that this promise of the defendant was; involuntary, and was made under a species of duress* for two reasons. First, that it was- made under the pressure of a wrongful demand, and secondly, to induce the plaintiff to perform his legal obligation. The evidence fails to show that the plaintiff made any demand whatever upon the defendant, but simply that an additional or supplemental agreement was entered into between the defendant as principal and the plaintiff as his agent. Neither does the testimony show that it was made to induce the plaintiff to perform Ms legal obligation. The non-appearing of the plaintiff before the arbitration committee, when summoned by Currie, Martin & Co., was not a legal obligation on *366 the part of the plaintiff that he owed the defendant. The right of the plaintiff to appear there, was not affected or controlled by the validity or non-validity of the claim of that firm. His appearance and explanation might have satisfied the arbitration committee that the defendant was not in default. • The defendant, as the plaintiff’s employer, and from motives or for reasons with which the plaintiff’ had nothing to do, and which were not embraced in the scope of his employment, instructed him, as the jury found, not to appear, and promised him compensation in case he sustained a loss from such service. Nothing involuntary or in the nature of duress appears in the transaction. An objection is presented, that the contract is 4 ‘ void for want of mutuality,” that is, for want of express proof, that when the defendant made his proposition to the plaintiff, the latter in express terms accepted and agreed to it. It is abundantly proved that the plaintiff performed what the defendant proposed to him that he should do, and that the defendant knew of such performance, and availed himself of its results. The defendant’s offer was upon the condition of this performance by plaintiff, and when the latter performed the acts which were made its condition, the offer was accepted and became a binding contract (L’ Amoureux v. Gould, 7 N. Y. 349; Willetts v. Sun Ins. Co. 45 Ib. 45 ; Train v. Gold, 5 Pick. 380).
It is insisted that the defendant’s final promise of September 5, 1867, was for simple indemnity, unmixed with any service or other benefit to the defendant, and unsupported by any consideration and void.
The plaintiff acted as agent for the defendant, under the rules of the open Board, which were known to the defendant, and recognized by him up to September 5, 1867. These rules, by the nature and acts of the employment, conferred certain legal rights and privileges in the -transaction of his business upon the plaintiff, as *367 was known to the defendant. At this date the defendant promised to indemnify the plaintiff against a pecuniary loss, if he would comply with his request to perform certain services for him in the course of his employ ment, and which involved a non-compliance by the plaintiff with those rules. It was believed by both parties that such compliance would render the plaintiff liable to expulsion from the open Board, and cause loss and injury to him in his business, for which, if it occurred, the defendant promised in advance compensation. This promise was not a wager, nor the result of an effort to obtain indemnity based upon a wrongful claim. It was notin hostility to the reasoning in Converse v. Kellogg (7 Barb. 598). It was conditioned upon a service to be performed by the plaintiff.
An ingenious and elaborate argument has been presented on the part of the defendant, to establish that the defendant was under no obligation to the plaintiff which could serve as a basis for the defendant’s promise. The transactions and accounts relating to them, with Currie, Martin & Co., and the results of the litigations growing out of them, are considered and reported in 45 N. Y. 842, and 2 Daly, 329, which are referred to. Whether the defendant was under any obligation to make the promise to the plaintiff or not, is immaterial. Neither is it material whether the defendant received benefit or not from the plaintiff’s performance. Where an employer requests a specific service, and promises indemnity and compensation therefor, the rights and remedy of the employee are not prejudiced by the failure of the service rendered to be of benefit to the employer, and the law presumes that the rendering of such service was the basis of the promise of indemnity.
An employment may be for acts of omission as well as of commission, and the distinction sought to be made in the present case between the two, as respects a remedy upon a promise of indemnity, is not well founded.
*368 It is stated, on the part of the defendant, that the plaintiff was under a legal obligation to do the very thing which he claims to have done at the defendant’s . request; that is, that he had no legal right to submit this claim of Currie, Martin & Co. to arbitration. What the defendant employed the plaintiff to do in this behalf, was simply “not to appear before the arbitration committee of the open Board when summoned to do so by Currie, Martin & Co., under the contract.” The question whether the plaintiff had the legal right or not to submit this claim to arbitration does not arise. It is immaterial. But the non-appearance of the plaintiff before the committee was in compliance with the defendant’s request, and upon his promise of indemnity, and in accordance with the new agreement of Sept, ñ, 1867, and irrespective of all questions of antecedent legq,l obligations in reference To such service, if any such obligation had ever existed.
In the performance of the last contract, the plaintiff' sustained losses incident to it, and such as were contemplated as probable by the parties, when they entered into it. There was such an assumption of liability and performance of acts detrimental to the plaintiff, as constituted a good consideration for the defendant’s promise (L’Amoureux v. Gould, 7 N. Y. 349 ; Milton v. Somhurst, 17 Maine, 303 ; Kempton v. Coffin, 12 Pick 129; Howe v. Buffalo, N. Y. and Erie R. Co., 37 N. Y. 297). The construction which the defendant put upon the contract, and the way it was understood at the time by the parties, are shown by the plaintiff’s performance, and the advances by the defendant to the plaintiff which were found to have been made in part compensation therefor.
The extent to which the agreement in question was executed, and the facts established at the trial are such, that no sufficient reasons appear for disturbing its validity.
*369 None of the exceptions seem to be of a character to call for a new trial.
The judgment appealed from should be affirmed with costs.
Van Vorst, J., concurred.