ROWLAND B. BLIVEN et al., as Executors, etc., Respondents, v. EMILY SEYMOUR et al., Respondents, AMELIA CRUMB et al., Appellants.

A general legacy can only have preference over other general legacies in the same will, when it is given for the support and maintenance of a near relative otherwise unprovided for, or for the education of such relative, or where it is in lieu of dower.

A failure to use in a will appropriate technical language, or a misapplication of legal terms, will not defeat an intention clearly manifested and sufficiently disclosed by an examination of the whole will.

The will of J., after a bequest to each of his two daughters, A. and E., of the use of $1,000, and after a bequest to A. of a gold watch, which had been bought for her but was in the testator's possession, gave to E. " thirty-five dollars in money." In an action for a construction of the will, *held*, that the gift to E. was a general legacy, and was subject to abatement ; that the fact that immediately preceding it was a specific legacy to the other daughter did not raise a presumption of an intent to make this also specific.

The clause giving to the two daughters the use of $1,000 each, directed " the principal to go to their children respectively." After various other bequests the will contained a clause expressing the " wish " of the testator that the $1,000 " devised " to his daughter A., in case of her death, leaving no child living, should go to E.'s children. In case A. died " leaving child or children, then the child or children are to have the use, and when the youngest shall come to his or her majority * * * then the same to be paid over to said child or children." A. had children living at the time of the testator's death. *Held*, that although the word "devise" was used, the clause referred to the $1,000, the use of which had been previously given to A.; that the word " wish " was used in the sense of " will," or " direct " ; that the bequest over to the children of E. was not repugnant to the gift previously made to A. and her

children; that no trust was created in the executors, and no duty imposed upon them which could not be executed by them as such; that the children of A. living at the death of the testator took distributively, and the share of each vested at once, subject to the life estate of their mother, and liable to be diverted by death in her life-time; and that therefore there was not a suspension of ownership for more than two lives.

*Converse* v. *Kellogg* (7 Barb. 596), questioned.

*Smith* v. *Van Ostrand* (64 N. Y. 278), distinguished.

One-half of the testator's residuary estate he gave to E., the other half he directed "to be put at interest," and $100 a year paid to A. in person annually; the first payment to be made one year after his death. E. was made residuary legatee. *Held*, that the annuity was not limited to the interest merely, but that A. was entitled to the full amount specified, commencing one year after the testator's death, to be made up out of the principal if the interest was insufficient to pay, until the whole fund was exhausted; if any thing remained, upon her death it went to E.

(Argued March 10, 1882; decided April 11, 1882.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made May 3, 1881, which affirmed a judgment entered upon a decision of the court on trial at Special Term.

This action was brought by plaintiff, as executor of the will of Sidney Janes, deceased to obtain a judicial construction of said will. The testator died in February, 1878, leaving his widow and two daughters, Emily Seymour and Amelia Crumb, surviving; both of the daughters had children then living.

The clauses of the will which are in question are as follows:

"I give to my wife Rhoda, in case of her becoming my widow, the use of the premises on which we now reside, and all of the household goods of which we are now possessed and own, to have and hold for her own use and benefit during her life-time, after which one-half of the same is to go to my daughter Emily, wife of Benjamin Seymour; and I further give to my wife $500 in money — $500. I give to my two daughters, Amelia, wife of Doctor D. W. Crumb, and Emily, above named, $1,000, each, to be put at interest and there kept, during their life-times, and they are to have the use thereof, then the principal to go to their children respectively each. I give to my daughter Amelia one gold watch; the same is in my possession and was

bought for her.  I give to my daughter Emily $35 in money. I wish my executors hereinafter named to obtain and set four sets of headstones, as follows: one to the grave of my wife Mary, one to the grave of my daughter Anbernett one to the grave of my wife Abiah, and one to my grave, good, common, respectable headstones, all.  And when the foregoing provisions shall have been completed, which I wish to have done as early as propriety shall indicate, and all dues and expenses paid, then whatever of property or value I may have left, I wish one-half of it to go to my daughter Emily, aforenamed, and the other half together with the one-half of the proceeds of the premises and household, the use of which is devised to my wife, to be put at interest.  I further give to my daughter Amelia, aforenamed, $100 a year, to be paid to her in person annually, and the first payment thereof to be paid to her one year after my death.  Of the $1,000 devised to my daughter Amelia, in case she should die not leaving any child or children living, then the $1,000 I wish to have go to my daughter Emily's children, but in case she dies leaving child or children, then the child or children are to have the use, and when the youngest shall come to his or her majority, or of age, not longer being a minor, then the same to be paid over to said child or children, and if my daughter Amelia should die, leaving any money or property arising out of the money payments devised in this will, then said money or property is to go to my daughter Emily. And I hereby make my daughter Emily the residuary legatee of any and all matters of value."

*George W. Ray* for appellants.  The legacy of "thirty-five dollars in money" to Emily is not a specific legacy, and it must abate with the others.  (2 Bouv. Law Dict. 21; *Tiff* v. *Porter*, 8 N. Y. 516; *Newton* v. *Stanley*, 28 id. 61; *Walton* v. *Walton*, 7 Johns. Ch. 258; 2 R. S. 90, § 45; 3 id. [6th ed.] 98, § 56.)  The language of the will, while not definite or certain as to the subject to which it applies, is entirely insufficient to create a valid gift of the $1,000, previously given absolutely to Amelia's children, to Emily's children.  (*Foose* v. *Whitmore*,

82 N. Y. 405; *Lines* v. *Darden*, 5 Fla. 51; 2 Abb. Law Dict. 655; 2 Redf. 410, 419.) On the death of Amelia her children take the $1,000, each share to be paid over to the lawful guardian then. At least each share must be paid over as each becomes twenty-one. (*Converse* v. *Kellogg*, 7 Barb. 590, op. 596; *Smith* v. *Edwards*, 23 Hun, 223; *Lovett* v. *Gillender*, 35 N. Y. 617; 1 R. S. 773, § 1; *Schettler* v. *Smith*, 41 N. Y. 328; *Everitt* v. *Everitt*, 29 id. op. 98; *Hawley* v. *James*, 16 Wend. 64; *Kane* v. *Gott*, 24 id. 641; *Gott* v. *Cook*, 7 Paige, 521; *Garvey* v. *McDevett*, 72 N. Y. 556.) Whenever the title to real property or personal estate becomes vested in a person of full age and laboring under no disability, he has the absolute right to receive the estate and handle it at pleasure. (*Hetzel* v. *Barber*, 69 N. Y. 12; *Lovett* v. *Gillenber*, 35 id. 617.) Absolute ownership carries with it control, enjoyment, possession. (Bouv. Law Dict. 268; Abbot's Law Dict. 6; *Converse* v. *Kellogg*, 7 Barb. 596.) Here there are no shares and no gift over of any part, or of the whole, and the limitation hitched on attaches to the *corpus* of the entire estate, and is void. (*Colton* v. *Fox*, 67 N. Y. 351; *Hawley* v. *James*, 16 Wend. 60; 72 N. Y. 562; *Jennings* v. *Jennings*, 7 id. 547; *Manice* v. *Manice*, 43 id. 303; *Craig* v. *Hone*, 2 Edw. 554; *McSorely* v. *Leary*, 4 Sandf. Ch. 414; *Taylor* v. *Gould*, 10 Barb. 338.) The trust created by this will, by its terms, continues as to all the property beyond the duration of two lives and is void. The law will not help it by declaring separate and several trusts as to separate and several shares. (*Colton* v. *Fox*, 67 N. Y. 351; *Stevenson* v. *Leslie*, 70 id. 517; *Tucker* v. *Bishop*, 16 id. 402; *Teed* v. *Morton*, 60 id. 506; *Johnson* v. *Valentine*, 4 Sandf. 37; 3 Wash. on Real Prop. 511; *Colton* v. *Fox*, 67 N. Y. 348.) When nothing is interposed between the infant and his enjoyment of the possession of the estate except his own minority, he has a vested estate. (*Converse* v. *Kellogg*, 7 Barb. 590, 596, 597; 1 Abb. Law. Dict. 6; *Teed* v. *Morton*, 60 N. Y. 502, 506.) By the first provision in the will, Amelia takes as trustee during life, using for herself only the interest, then the fund goes absolutely to her children. (*Smith* v.

*Van Ostrand*, 64 N. Y. 278.) From the one-half of the proceeds of the real estate, to be put at interest, Amelia Crumb is entitled absolutely to the sum of $100 annually; such payment to commence as of one year from the death of the testator. Such payments are to be made from both the principal and interest if necessary. (*Pierrepont* v. *Edwards*, 25 N. Y. 128; *Newton* v. *Stanley*, 28 id. 61, op.; *Giddings, Ex.* v. *Seward*, 16 id. 365; *Watsons* v. *Smith*, 7 Hun, 544; *Dickens* v. *Edwards*, 30 Hare, 275; *Mann* v. *Copeland*, 2 Maddock, 223; *Savile* v. *Blockett*, 1 P. Wms. 778; *Creed* v. *Creed*, 11 C. & F. 491; *Gordon* v. *Duff, in re Ward*, 28 Beavan, 519; *Paget* v. *Hurst*, 9 Jur. [N. S.] 900; *Mullins* v. *Smith*, 8 Weekly Rep. 739; 2 Redfield on Wills, 140, § 7, sub. 16.) In case Amelia dies before this entire fund is paid over, the sum remaining goes to her personal representatives; in the case she dies before it is all paid over, the balance falls into the general estate, and does not pass to Emily under the residuary clause. (Redfield on Wills, 145 [154]; *Jennings* v. *Conboy*, 73 N. Y. 230; *Parker* v. *Plummer*, 1 Cro. Eliz. 190; *Keny* v. *Derrick*, 1 Cro. Jac. 140; *Stewart* v. *Garnett*, 3 Sim. 398; *Doe dem. Guest* v. *Bennett*, 5 Eng. Law & Eq. 536; *Sink* v. *Sink*, 53 How. Pr. 400; *Matter of Dowd*, 8 Abb. N. C. 118.) Amelia's estate and ownership of what is paid her is absolute, and not a life estate, and therefore this attempt to create a life estate with remainder thereon is void and repugnant to the absolute gift. (*Hetzel* v. *Barber*, 69 N. Y. 15; *Oxley* v. *Lane*, 35 id. 340; *Lovett* v. *Gillender*, 35 id. 617; *Patterson* v. *Ellis*, 11 Wend. 259; *Smith* v. *Van Ostrand*, 64 N. Y. 284.)

*R. A. Stanton* for plaintiffs, respondents. While the general rule is that all legacies payable out of the personal estate abate in proportion, in case of a deficiency of assets, and technically are not specific but are general legacies, there are exceptions to the rule, and the only way of ascertaining such exceptions is in ascertaining the intention of the testator. (*Scofield* v. *Adams*, 12 Hun, 370; *Stewart* v. *Chambers*, 2 Sandf.

Ch. 293, 396.) The provision for Amelia is wholly a question of intention, and since no positive rule of law is violated by the construction adopted by the court below, that intention should control. (*Everitt* v. *Everitt*, 29 N. Y. 79; *Colton* v. *Fox*, 67 id. 351.) The clause of the will providing: That in case Amelia should die not leaving any child or children living, then the $1,000 given to Amelia during life should go to Emily's children, is to be construed together with the former clause, and the first absolute gift in terms will be modified by the later clause, and there is no repugnance between them. (*Norris* v. *Beyea*, 13 N. Y. 273; *Smith* v. *Van Ostrand*, 64 id. 285; *Tyson* v. *Blake*, 22 id. 558.) The remainder to the children of Emily, in case Amelia dies without issue, is valid. (*Guernsey* v. *Guernsey*, 36 N. Y. 267.) By the provision of the will that in case Amelia dies leaving child or children, then the child or children are to have the use, and when the youngest shall come to his or her majority, then the same to be paid over to said child or children, the absolute ownership of the fund is suspended only during the life of Amelia. At her death it becomes vested in her then living children who are the owners of the principal and income as tenants in common. (*Everitt* v. *Everitt*, 29 N. Y. 72; *Colton* v. *Fox*, 67 id. 353.)

Finch, J. It is to be regretted that an estate so small as that here in controversy should be further lessened by a litigation, both long and severe; but the contest may have been unavoidable; and in any event the questions presented must be carefully determined without reference to the amount involved. The will to be construed is quite confused, and very inartificially drawn, and makes any effort to ascertain the intention of the testator somewhat difficult and unsatisfactory. We may best examine it by considering in their order the objections taken by the appellants, and the construction of separate provisions for which they contend.

The will contains a bequest in the following language: "I give to my daughter Emily $35 in money." Imme-

diately preceding this was a specific bequest to the other daughter, Amelia, of a gold watch, which was in testator's possession, but was bought for her; and still earlier in the order of the will, a bequest of the use of $1,000 to each of the said daughters. The appellants insist that the bequest of $35 is a general legacy, and so subject to abatement, while the respondents contend that it is intended as specific and not to be abated. The courts below have concurred in the latter opinion. The only ground suggested is the hazardous inference that because a specific legacy of a watch had just before been made to the one sister, the money given to the other was intended to balance it, and to be paid in full and without abatement. The suggestion is perhaps probable, but founded upon no language of the will, and straying from the ordinary rules of construction. The gift is simply of so much money. It is not of any particular sum, or even out of any described fund. Any money of the estate would discharge it, and whatever we may imagine was the unuttered and unexpressed wish or purpose of the testator, we cannot disregard the thing which he has said, and put in its place the thing he did not say. The question is very unimportant in amount, but it may come to us again with large consequences behind it, and we must not establish a precedent by which a general legacy of money, plainly and unequivocally expressed, becomes in effect a specific legacy, because we can see that the testator might very naturally and justly have made it so. It could not have been adeemed; it was not even demonstrative; and was general and not specific. And though a general legacy may sometimes have a preference over other general legacies in the same will, it is only in certain recognized cases. Where it is given for the support and maintenance of a near relative, otherwise unprovided for (*Scofield* v. *Adams*, 12 Hun, 370), or for the education of such relative (*Petrie* v. *Petrie*, 7 Lans. 90), or where it is in lieu of dower and so may be deemed a purchase-price (*Blower* v. *Morret*, 2 Ves. Sr. Ch. 421), such general legacy has been granted a preference. No such fact raises the question here. The will is bare of any such suggestion, and we are left with only the

probable guess that because a watch was given to one legatee, the gift of money immediately following to another legatee, was intended to operate as specific although expressed as general. We cannot assent to that construction, especially in view of the fact that in doubtful cases the courts lean against a construction which makes the legacy specific. (*Foote's Appeal*, 22 Pick. 299.)

The next questions raised are over the bequest of the use of $1,000 to the testator's daughter Amelia. His language is, " I give to my two daughters, Amelia, wife of Dr. D. W. Crumb, and Emily, above-named, $1,000 each, to be put at interest and there kept during their life-times, and they are to have the use thereof, then the principal to go to their children respectively each." So far nobody criticizes the bequest. The life estate to the daughters with remainder over in each case is plainly expressed. But after a series of other bequests the possible death of Amelia's children before the termination of the life estate seems to have occurred to the testator, and he returns to the subject of this bequest, and provides for the emergency, thus : " Of the $1,000 devised to my daughter Amelia, in case she should die not leaving any child or children living, then the $1,000 I wish to have go to my daughter Emily's children ; but in case she dies leaving child or children, then the child or children are to have the use, and when the youngest shall come to his or her majority, or of age, not longer being a minor, then the same to be paid over to said child or children." It is over this provision that the main controversy has arisen. It is said, *first*, that the legacy of $1,000 is not described because the testator speaks of it as " devised." That is purely a verbal criticism. That the word is used inaccurately does not alter the distinct reference to " the $1,000," the use of which had been previously given to Amelia. The criticism then strikes upon the word " wish," in the bequest over. It is plainly used in the same sense as if he had said I will, or I direct. A failure to use appropriate technical language, or a misapplication of legal terms, will not defeat an intention clearly manifested and sufficiently disclosed by an examination of the will itself. (*Parks* v.

*Parks,* 9 Paige, 107; *DeKay* v. *Irving,* 5 Denio, 646.) It is then said that the bequest over to Emily's children is repugnant to the gift previously made to Amelia for life with remainder to her children. There is no inconsistency in the two provisions. Read together they constitute a bequest often found in the books; to one for life, with remainder to children and a limitation over in case of their death. The argument addressed to us on the ground of repugnancy would tend to make it impossible ever to vest an estate in one, subject to be divested by his death, and carried over to a new or substituted ownership. The gift to Amelia's children is qualified by the limitation over in case of their death, and is to be treated as a single bequest to such children, with its character and extent defined. The next objection urged is, that the gift is void as suspending the absolute ownership for more than two lives, and the argument goes largely upon the ground that the fund, as a whole, was vested in the executors as trustees, and such trust would not terminate until after the death of the wife, and the arrival at full age of the youngest of an unknown number of children. But there is here no trust. No attempt to create one has been made; there is not even an express gift to the executors. Nothing whatever is required of them which they may not do as executors and by virtue of the power impliedly conferred. They hold as executors merely, performing their duty as such without taking a trust estate. (*Gilman* v. *Reddington,* 24 N. Y. 18; *Williams* v. *Conrad,* 30 Barb. 524; *Martin* v. *Martin,* 43 id. 172; *Burke* v. *Valentine,* 52 id. 412; *Everitt* v. *Everitt,* 29 N. Y. 72; *Tucker* v. *Tucker,* 5 id. 408.) And this is more especially true where we are asked to raise a trust by implication which is not only unnecessary, but would be void when created. (*Smith* v. *Edwards,* MSS., Feb. 1882.)[*] It is then further said that Amelia's children take as a class and not in severalty, because no separate shares are specified, and there is no gift over of any part. That consideration is very important in a case where a trust exists which may be construed, either as single, and covering the whole fund, or as an aggregate of

---

[*] *Ante,* p. 92.

separate and several trusts for the benefit of each legatee. But where a life estate is given to a widow, with remainder to the children, and such remainder vests at once upon the death of the testator, the children take as tenants in common, and the proper share of each vests in each. Such is the express provision of the statute as to a grant or devise of real estate (1 R. S. 727, § 44), and the same rule is applicable to a bequest of personalty and must be so applied. (*Everitt* v. *Everitt*, 29 N. Y. 72.) The children of Amelia living at the death of the testator took distributively, and the share of each vested at once, subject to the life estate of the mother, and liable to be divested by death in her life-time. The case is one of a gift *in presenti*, with the period of payment postponed. (*Smith* v. *Edwards*, *supra.*) And that furnishes the answer to the further contention, founded on the postponement of payment to Amelia's children until the youngest should reach its majority, they, however, receiving the whole interest until payment. Their legacy vested upon the death of the testator, and the period of payment only was deferred. Whatever was said in *Converse* v. *Kellogg* (7 Barb. 596), which warrants an inference that such deferring of payment amounts to a suspension of the absolute ownership, has no sanction in the decisions of this court. (*Everitt* v. *Everitt; Gilman* v. *Reddington, supra.*) It is further claimed that the fund is to be delivered to Amelia, and she is to hold it, first for her own life and then as trustee for those interested in the remainder. The authority to which we are referred (*Smith* v. *Van Ostrand*, 64 N. Y. 278) turned upon special language in the will which led to a decision that the widow had more than a mere life-estate, and was entitled to take in addition so much of the principal as was necessary for her support. In that case, too, there was an express direction that the fund be paid to her. The correct rule was declared to be, that unless otherwise directed by the will it was the duty of the executors either to invest the money and pay over the income, preserving the principal for the remaindermen, or, if they paid it to the legatee for life, to exact security which would perfectly protect the principal. There was no direction

here which can be held to divert the fund from the control of the executors and give it to Amelia as trustee.

As to the next question raised, we concur with the appellants and disagree with the courts below. The will began with a bequest to the widow and a gift to her of a life estate in the homestead and household goods, followed by a devise to Emily of the one-half of the homestead and household goods, subject to her mother's right. Then come the bequests of $1,000 and of the watch and $35 in money already considered. And then, after providing for suitable headstones and the payment of debts and expenses, the testator disposes of the residue. One-half thereof, excluding the half of the homestead and household goods not yet disposed of, and reserved for Amelia, he gives to his daughter Emily. The other half, including such half of the homestead, he directs " to be put at interest," and then adds, " I further give to my daughter Amelia aforenamed $100 a year to be paid to her in person annually, and the first payment thereof to be paid to her one year after my death." It is conceded by all parties that this annuity is to be paid out of the interest, or interest and principal, of the fund just before provided, and consisting of one-half of the proceeds of the homestead and household goods, and the same proportion of any residue from other sources remaining. The contention is, on behalf of the respondents, that Amelia is to have only the interest up to $100 a year and none of the principal. The General Term so held. They rejected the requirement that the annuity should begin one year after the testator's death, and because the homestead and household goods could not be sold and become interest-bearing until the death of the widow, substituted a construction which begins the annuity one year after such death, and the absolute gift of $100 a year is transformed into the gift of the interest merely, although much less in amount. We think this is making too free with the directions of the will. If the testator intended only a life estate to Amelia, the previous clauses of his will show that he knew how to declare that intention. As he had given Emily half of the homestead it was natural to give

the other half to Amelia, and the final gift over of what Amelia should leave indicates that she was to have some benefit of the principal, which might result, by reason of the manner of payment, in her death before it was fully exhausted. We are of opinion that Amelia is entitled out of the interest and principal to receive her full annuity dating from one year after the testator's death, in sums of $100 each year, while she lives and until the fund is exhausted; and that any thing which may remain upon her earlier death is to be paid over to Emily. It is said that the residuary clauses do not work this result, and that any unexpended balance will fall into the general estate. Those clauses are as follows, viz.: "If my daughter Amelia should die, leaving any money or property arising out of the money payments devised in this will, then said money or property is to go to my daughter Emily." While this phrasing is awkward and open to criticism, it plainly refers to something given by the will in such manner that an unexpended portion may be left by the death of the legatee before exhausting the whole. And since, in addition, the testator adds: "I hereby make my daughter Emily residuary legatee of any and all matters of value," we think the balance left by Amelia's death was in the testator's mind and intended to pass as a part of the residue.

The difficulty of interpreting correctly such a will as this has been felt by every tribunal before whom its provisions have been discussed. The view we have taken of it seems to us the nearest possible approach to the intention of the testator.

The judgment of the General Term should be modified by declaring the legacy of $35 to be general and subject to abatement, and the annuity of $100 to be payable to Amelia during her life out of the principal and interest of the one-half of the fund described as resulting in part from the sale of the homestead, commencing one year after testator's death, and any balance remaining upon her death to go to Emily; and as modified affirmed; neither party to have costs.

All concur, except RAPALLO, J., absent.

Judgment accordingly.