In the Matter of Proving the Last Will and Testament of JOSEPH GOLICKI, Deceased.

(Surrogate's Court, Herkimer County, July, 1921.)

**Wills — signature by mark sufficient subscription.**

> Where at the hospital to which he had been taken for medical aid after being seriously injured, decedent, upon being told by one of the attending physicians that it was very doubtful if he would recover, executed a will expressing his desire to leave all his estate, consisting solely of personal property, to his wife, his signature to the instrument by an X mark is a sufficient subscription to satisfy the Statute of Wills.

PROCEEDINGS upon the contest of a will.

E. M. Brown, for petitioner.

Charles B. Hane, special guardian for three minors.

BELL, S.   On the evening of May 12, 1921, Joseph Golicki met with a very serious accident in the town of Herkimer, this county.  He was taken to the Emergency Hospital, in the village of Herkimer, where he was given medical aid.   He had about $1,100 in bills in one of his pockets which he handed to Doctor James W. Graves in the hospital, telling the doctor to give it to his wife.   He asked Doctor Canfield about his condition, if the doctor thought he would recover and the doctor told him in substance that it was very doubtful.   He then said he wanted to make his will. He wanted everything he had left to his wife.   Doctor Canfield then wrote the alleged will which was read over to Golicki by Doctor James W. Graves, who asked him to sign it; he said he would make his " cross," which he did, with the assistance of Doctor Graves,

in the presence of Rev. Anthony Pinciurek and Ralph W. Cress, Doctor Graves writing the words " His Mark " and just signing his own name as a witness to the cross or mark. Golicki's name was not written. The execution was witnessed by Rev. Anthony Pinciurek and Ralph W. Cress who signed their names at that time. Golicki said it was his will to these two doctors and the two subscribing witnesses; he said both in Polish and English that he wanted to leave all he had to his wife. He could write but he was so weak and in so much pain that he wanted to make his signature by mark.

This will was made along about midnight, decedent was conscious, understood the situation and his mind was clear. He lived about three hours after making this will.

The following is a copy of said will:

" EMERGENCY HOSPITAL,
                   HERKIMER, N. Y.
" I Joseph Golicki believing I am going to die desire to leave all moneys and property, including money in Bank to my wife Mary Golicki.
" RALPH W. CRESS,                     X His Mark
" *Notary Public*                        J. W. GRAVES
" Herkimer Co.     REV. A. PINCIUREK."

Was the signing by mark a sufficient subscription? I think it was.

Section 46 of the General Construction Law provides: " Signature. The term signature includes any memorandum, mark or sign, written or placed upon any instrument or writing with intent to execute or authenticate such instrument or writing."

Page on Wills, section 173, is as follows: " The signature may consist of a mark. This is usually in the form of a cross, about which some one writes the

name of the decedent and the words, ' His Mark.' The law, however, does not usually require such form; any lines visible on paper which were put there by testator as his signature is a mark in the contemplation of the law.''

Judge Woodruff said, in *Jackson* v. *Jackson*, 39 N. Y. 153, 160: '' When it is necessary to prove the execution of an instrument by a ' marksman,' the proof is evidence of the *making of the mark;* the writing of the name around it is no essential part of the evidence.''

The headnote in *Van Hanswyck* v. *Wiese,* 44 Barb. 494, is as follows: ''Where a testator, being too weak to subscribe his name, at the end of his will, two marks were made, in the proper place, opposite a seal, with a pen held in the fingers of the testator, and his hand guided by another, which marks he declared it to be his wish should be understood to be his signature; *Held* that this was a valid subscription of the will, by the testator, within the meaning of the statute.''

Does the word '' desire '' command disposition, and is it of testamentary character?  I think it is.

Mr. Alexander in his Commentaries on Wills, volume 2, section 1095, says: '' Words of desire, or other similar expressions, when used for the purpose of declaring the manner of the disposition of the testator's property after his death, and not as a request or prayer directed to a devisee or legatee concerning the devise or legacy given him, are words commanding disposition and are testamentary in character.  They are not precatory, but of positive direction and binding upon the court in the distribution of the estate.''

In *Phillips* v. *Phillips,* 112 N. Y. 197, Judge Finch said, on page 202: '' But the word ' wish ' used by a testator is often equivalent to a command.  If in this

will, he had said, I wish all my property to go to my wife, and naming her as executrix, had ended his will, neither she nor we would have questioned that the devise was effectual.''

In *Bliven* v. *Seymour*, 88 N. Y. 469, the will provided: '' Of the $1,000 devised to my daughter Amelia, in case she should die not leaving any child or children living, then the $1,000 I wish to have go to my daughter Emily's children,'' and the court said at page 476: '' The criticism then strikes upon the word ' wish,' in the bequest over. It is plainly used in the same sense as if he had said I will, or direct. A failure to use appropriate technical language or a misapplication of legal terms, will not defeat an intention clearly manifested and sufficiently disclosed by an examination of the will itself.''

In *Meehan* v. *Brennan*, 16 App. Div. 395, the court said, at page 398: '' It is said in the will that the testatrix declares that in the event of her death the following was her, ' wishes, desires and intentions.' These words do not necessarily, of course, in all cases imply a command, but whenever they are used in such a connection as this by a testatrix, the question is raised whether the testatrix meant by them simply to advise or influence a discretion which she vests in somebody or whether she intended to control or direct a certain disposition. (*Phillips* v. *Phillips*, 112 N. Y. 197.) If the latter intention is deductible, then the word ' wish ' will be construed as imperative and to imply a direction by which the executor of the will and the courts are to be bound. In this case the testatrix evidently intended to dispose of this property. She was at liberty to do what she chose with it. She expressed her intention by the use of the word ' wish,' and in the connection in which she has used

it, it clearly has, as we think, the same force as though the word, ' direct ' had been used.''

I am satisfied and find that this testator, by this will. intended to and did give and bequeath all of his property (being only personal) to his wife, Mary Golicki.

That said will was duly subscribed by the testator at the end of the will and duly executed.

That he was of sound mind and memory and not under any restraint or influence.

Decree will be signed admitting the will to probate.

Decreed accordingly.