ADELAIDE A. HILLYER, Appellant, *v.* MARY ANN
VANDEWATER *et al.* Respondents.

*Court of Appeals, June 3, 1890.*

Affirming 48 Hun, 614, Mem.

*Will. Suspension of power of alienation.*—A devise by a testatrix of her
whole residuary estate, real and personal, *in solido*, to her executors
in trust to invest the same, and after paying the usual expenses of
care and management, to divide the net income equally among her
three daughters, and at the end of ten years distribute the principal
among them in the same proportions, does not suspend the power of
alienation as to the real estate, or the absolute ownership as to the
personal property more than two lives in being, and is valid.

Appeal from a judgment of the general term of the supreme
court, affirming a judgment entered upon the decision of the
court.

This action was brought for the partition of real estate by
authority of section 1537 of the Code.

The plaintiff is one of the children of Mary Ann Vande-
water, who left a will, by which, after directing her debts
and funeral expenses to be paid and giving a couple of
legacies, she made the following disposition:

"*Fourth.* All the rest and residue of my estate, both
real and personal, of every kind and nature and wheresover
situated, I give and devise to my daughters Mary Ann Vande-
water and Adelaide Augusta Hillyer, my executrices
hereinafter appointed, in trust for the execution of my will,
with power to sell, lease, mortgage and dispose of the same,
and convey good title thereto in fee simple or otherwise, at
public or private sale, at such time and upon such terms
and in such manner as shall seem for the best interest of my
said estate.

"*Fifth.* It is my will, and I hereby direct my executrices

hereinafter appointed to keep the real estate whereof I may die seized and possessed reasonably insured, to provide for rebuilding in case of loss by fire so long as the same shall remain unsold or undisposed of, and to convert all my personal estate into money and keep the same invested in safe interest-bearing securities and collect the rents, issues and profits accruing from both, and after paying all taxes, assessments, insurance, repairs and other necessary expenses connected with the care, management and administration thereof, I do direct that all the residue be divided into three equal portions, and at the expiration of each six months, or as near that period as shall be found practicable for the period of ten years after my decease, pay one-third part thereof to my daughter Mary Ann Vandewater, one-third part to my daughter Susan K. Vandewater, and the remaining one-third to my daughter Margaret K. Howes.

"*Sixth.* At the expiration of ten years after my decease, it is my will, and I do hereby direct, that my executrices sell and convert all my estate, both real and personal, into money, and distribute the same between my daughters hereinbefore named share and share alike."

*Theodore F. Miller*, for appellant.

*Louis Marshall*, for respondent.

FINCH, J.—I have not been able to satisfy myself that the testatrix failed to create a trust by the terms of her devise to her executors, and gave merely a power in trust which was sufficient for all the purposes of the will. I admit that very much may fairly be said in support of that construction; but since I have reached the conclusion that the trust, if created, was valid, and did not unduly suspend the power of alienation, I prefer to put my opinion and my vote upon that basis.

The substance of the testatrix' provision is a devise of the

whole residuary estate, real and personal, *in solido*, to her executors in trust to invest the same, and after paying the usual expenses of care and management, to divide the net income equally among her three daughters, and at the end of ten years distribute the principal among them in the same proportions. It is contended that by this trust the power of alienation as to the real estate and the absolute ownership as to personal property are suspended for the ten years, and possibly for more than two lives in being, and so the devise is invalid and must fail. That is true if we are obliged to regard the trust as a single and indivisible limitation, and as constituting one trust for three persons jointly instead of three several trusts for each one respectively. I think the last is the correct construction, and that the devise is to be regarded as creating a separate and several trust for each of the three children, and which runs for the life of such child, or for the shorter period of ten years if the beneficiary shall survive their lapse. The question involved is, therefore, that of the divisibility of trusts seemingly constructed as one; and only arises where the separate trusts are aggregated into a single one by the language of the will, and so are apparently one, and not many. The inquiry thus is: when we may regard that separation as within the testator's purpose and intent, notwithstanding the fact that he has enveloped all the interests in one constructive form.

Obviously, very much depends upon the manner in which we approach the inquiry, and the presumptions which are controlling. If we come to it on the theory that the form of expression, as of a single trust, is *prima facie* to dictate the conclusion, and that no severance is to be adjudged unless some words or provisions are to be found on the face of the will which affirmatively indicate in the testator's mind the presence of such purpose, we are very likely sometimes to be troubled to find them, and to be forced to a destruction of the trust by reason of their absence. If, on the other hand, notwithstanding the devise *in solido,* and the admitted joint

tenancy of the trustees, the interests of the beneficiaries as between themselves are presumptively held as tenants in common, and conclusively so unless some provision of the will positively negatives that relation, then we need no help from a minute exploration of the will, but must only inquire whether the several ownership is impossible or forbidden.

The importance of this distinction is, to my mind, so great that some consideration should be first given to its origin, and its recognition by the authorities.

It became one of the subjects of discussion first by the chancellor and afterwards by the court of errors, which reversed his decree, in the case of Lorillard *v.* Coster, 5 Paige, 172, and 14 Wend. 265, and which is interesting not only from the vigor of its reasoning, but, because, for the first time in the court of last resort, it brought under review the new system formulated by the Revised Statutes. The case need not be studied in all its numerous details, but attention should be given to the particular form of devise which led to the discussion. The testator had made his brother and twelve nephews and nieces his executors, and devised his real and personal estate to them as joint tenants, and not tenants in common, in trust, among other things, to pay over a residue of the rents and profits to such twelve nephews and nieces, during their natural lives, and to the survivor or survivors of them, to be equally divided between them or such of them as should from time to time be living, share and share alike. After the death of the twelve nephews and nieces the estate was to be equally divided among all their children and the surviving children of such of them as might then be dead. Both courts agreed that the devise over was too remote, and, therefore, void ; but disagreed as to the trust for the application of income. If that contemplated an estate in the trustee for twelve lives before it could vest, it was, of course, void ; but the chancellor held to the contrary upon the proposition that the nephews and nieces took severally

and as tenants in common, each his or her undivided one-twelfth, with cross remainders over, which were good for two lives, but void beyond that.   His conclusion was founded, not upon any words of the will indicating an actual intent of severance, but upon the statutory provision that every estate granted or devised to two or more persons in their own right is to be deemed a tenancy in common unless declared to be a joint tenancy.   He added that in the form which the trust devise assumed it would have created a joint tenancy in the beneficiaries at common law, but the statute had reversed that rule, and, since its passage, " every grant or devise of an interest or estate in lands to two or more persons, in their own right, or to others in trust for them as the persons beneficially interested therein, has been deemed and taken to be a tenancy in common between the parties beneficially interested, unless expressly declared to be a joint tenancy."   He drew the conclusion that the twelve separate interests implied twelve corresponding trust estates, and this, notwithstanding the provision for survivorship.   But, on a writ of error, that provision led to a reversal. All agreed that it amounted to a declaration, on the face of the will, of a joint tenancy among the beneficiaries, but the chief justice, in arguing that they had only an equity and not an estate sufficient to support cross remainders, questioned the propriety of applying legal rules to such interests; while Judge NELSON asserted it as vigorously as the chancellor and pointed out the statute which required it.   He said that the express trust allowed to be created was so allowed (§ 55) " subject to the rules prescribed in the first article of this title ; " that such article is devoted to the creation and division of estates ; and that " it seems necessarily to follow that the rules there prescribed, concerning these estates, so far as they can be consistently applied, are to govern the interest or trust, or whatever other name the right might be called, that belongs to the nephews and nieces under the second article · " and added that the

2

application of rules concerning legal estates to trusts in a court of equity is not original in the stautes, and demonstrated that fact.

We are next to see what became of this doctrine in our own court after its organization. In Savage *v.* Burnham, 17 N. Y. 571, it was said that if the beneficial interests under the will had been given to all the children in the joint tenancy, and the will had required the whole estate to be kept together under the trust until all the lives or minorities were spent, it would have suspended the absolute ownership.

In Everitt *v.* Everitt, 29 N. Y. 39, the whole estate was enveloped in a single trust to the executors for the purpose of the will. Question arose over the bequests to the children, and here I quote the language of the court: " But the bequests constituted the legatees tenants in common, and they took distributively, and not jointly. It has long been a provision of statute law that a grant or devise to two or more persons in their own right creates a tenancy in common, unless expressly declared to be a joint tenancy. The rule is different as to the estates of trustees and executors, who always hold in joint tenancy. But we are now dealing with the interest of the defendants in the residue of the testator's estate, and not with the rights of the trustees. The latter, if the trust was legal, were doubtless joint tenants, but the beneficiaries took the interest intended for them as tenants in common. If this was less clearly so upon the terms of the statute, the particular provisions of this will show that the gifts were distributive, and not joint." The language thus quoted applies the statute explicitly to the equitable interest of beneficiaries. In a later case the presumption was utilized where its aid was sorely needed. McKinstry *v.* Sanders, 2 T. & C. 181 ; affirmed, 58 N. Y. 662. There were phrases of survivorship, and it was deemed an important element in the discussion that a tenancy in common was to be inferred from the equality

of division, in preference to a joint tenancy from equivocal and ambiguous expressions of survivorship. I have thus recalled the statutory rule of construction, because in examining the later cases I have imagined that it has not always been given its due force, and that, as a consequence, we have · sometimes, myself as often as any, borne heavier burdens in the endeavor to save the reasonable purposes of a testator than the necessities of the case required.

It follows that, in examining the present will, we are to assume that the three children took as tenants in common, unless that is impossible or forbidden. Whether it is so or not remains the subject for consideration. That the testatrix meant that each of her children should have one-third of the income and one-third of the principal is quite apparent, but whether her purpose was so expressed as necessary to postpone the vesting, and turn the presumed tenancy in common into a joint tenancy may, perhaps, be most severely tested by a possible hypothesis. Let us suppose that one of the three children had died two years after the death of the testatrix and had left issue her surviving, and we were obliged to determine whether the terms of the will disinherited that issue and carried the parent's one-third over to the surviving sisters at the end of the trust term. There is no provision for survivorship. The ultimate vesting of the fee is in the three children, not in such of them as may be living at the end of ten years. We had exactly that question presented under another will in case of Goebel *v.* Wolf, 113 N. Y. 405 ; 23 N. Y. State Rep. 176, where the trustees were directed to divide the estate on the arrival of the youngest child at the age of twenty-one years equally among the children, share and share alike. The question presented was said to be whether each child took, on the testator's death, a future vested estate in the undivided one-fourth part of the property descendible to heirs and next of kin, or whether the gift was to a class and to such only as survived the trust term. There, as here, there was no immediate

gift of the remainder in terms, and outside of the direction to distribute to the children of the testator living at his death; but our attention was drawn to the fact that the ultimate vesting was not specified to be to the children *living* at the time of the division, or to the *survivors* of the children, as would naturally have been the case if the vesting was postponed to the end of the trust term. The absence of words of immediate gift we held not to be conclusive. There is such absence in the present will, and no gift till the words of distribution are reached, and that is an indication of an intent to postpone the vesting. The rule, however, in that respect, is a flexible one, and the circumstance only an argument. Smith *v.* Edwards, 88 N. Y. 92. It gives way to many exceptions, and does not govern the construction where other facts tend to the contrary, or different purposes are indicated. It is useful as a servant, but must not be acknowledged as a master. One of the incidents which leave it without force is the vesting of the right to the entire interest of a share before the end of the trust term. Where the gift is to be severed *instanter* from the general estate for the benefit of the legatee, and in the meantime the interest is to be paid to him, that indicates a vesting of the principal, and a postponement of the day of payment only. Tucker *v.* Bishop, 16 N. Y. 405; Warner *v.* Durant, 76 Id. 133. In the present case the gift was the trust fund, and was severed instantly from the general estate, of which it was the residue, after payment of debt and specific legacies, and the interest and income of that several residue, less the expenses of obtaining it, was not only to be paid over to the beneficiaries, but was to " be divided into three equal portions," as it accrued and as it was held until payment. Judge FOLGER said in the case cited: " It is the giving, *ad interim*, directly and at once, to the legatee of the whole yearly profit of the legacy which indicates the purpose to vest the legacy at once." And this is true, because interest is the premium for the forbearance of principal, to

which it supposes a title ; and because we cannot be expected to hold that the right to the interest and income vests in one person at one time, and the principal given to the same person vests at another, without some explicit language in the will which indicates a different purpose as to each, and a discovery of some reason for the difference. There was such reason for postponing the enjoyment, and the trust was ample for effecting that purpose, but no reason for postponing the vesting of the title. On the contrary, the words of ultimate distribution seem to exclude such discrimination. If the gift, at the end of the trust term, had been merely to " children " and susceptible of an interpretation limited to survivors, it would not have had that meaning, and the decease of any before the period of distribution would produce no other effect than to substitute their respective representatives. 2 Jarm. on Wills, 97. But here the distribution is to be " between my daughters hereinbefore named, share and share alike." It was to be, not between two of them surviving to that date, or one alone remaining, but between all three specifically named, and those three share and share alike, and implying a division into thirds, and not otherwise. No argument for a joint tenancy can, therefore, be drawn from a supposed postponement of the vesting of the remainder beyond the trust term, and that cannot be relied on as indirectly declaring such joint tenancy and rebutting the statutory presumption of a tenancy in common. And so it will follow in the case which we supposed, that each daughter took at the death of the testatrix a future vested estate in one-third of the residue, subject only to the execution of the trust. A doubtful claim of joint tenancy will not do in face of the statute, which declares the beneficiaries tenants in common, unless the will makes them, in express terms, joint tenants. To that may be added two other admitted rules of construction. One, that the law favors a vested in preference to a contingent estate, and the other that a construction is to be preferred

which saves and does not destroy the will. It seems to me that no reasonable doubt can remain that the three daughters took each a future vested estate in one-third of the property as tenants in common, and by separate and severable titles. Of course the trust must be deemed to correspond, and becomes divisible into a separate trust for each ; for while it is the mould which holds in its clasp the beneficial interest, it takes the exact shape which those interests assume, and fits like a mould to every characteristic of the core. The death of either one would thus vest her share in her heirs or next of kin. The testatrix made no provision for that event, but left it to be governed by appropriate legal rules. The right to one-third of the income and one-third of the property itself, which thus would have devolved upon the deceased child's heirs or next of kin, would be a vested estate in such third, freed and discharged from the trust. It could not be otherwise. Every purpose of the trust as to that portion of the estate would be fulfilled and ended. The trust was to pay over rents and profits to the daughter, not to her successors. They were not made beneficiaries of the trust, nor were the executors in any manner nominated or appointed as their trustees. The portion which devolves by death is necessarily freed from the trust by that event, and the executors hold that portion, not as trustees for such heirs and next of kin, but as tenants in common with them of such portion. The result is clearly sketched in the same detail in Everitt *v.* Everitt, *supra.* The effect of the death of one of the beneficiaries where there is no survivorship and no disposition by the will of the share or portion of the deceased implies a purpose on the part of the testator to have that share or portion go under the rules of law and as they dictate. Substantially that was ruled in the Matter of Verplanck, 91 N. Y. 439, where it was suggested that no provision was made for the disposition of the fund in the case of the death of either one of the nieces unmarried. EARL, J., answered: " But the

law provides for such a case. The purpose of the trust, as to the legatee dying, will by that event be fully accomplished. There will be no longer any purpose for which the trust could be continued, and hence it will cease, and at once the third will pass to those upon whom it will devolve under the provisions of the will or by law." Under the application of that doctrine to the present will each one-third of income and of estate upon the death of its owner as beneficiary will vest in her heirs and next of kin and become at once alienable ; and the share is left in that condition purposely and intentionally.

What is there which forbids this intended and inevitable result ? The one thing which can be said, and the only thing possible to say, is that on the face of the will there is disclosed an intention of the testatrix to keep the property together without division in the hands of the executors for ten years. It would not alter the case if such was the fact. But no such absolute intention appears. It does appear that such was her purpose if all three children survived the ten years. The devise assumes their survival. At the end of ten years the whole property is to be equally divided among the three, and no word is said which contemplates their earlier death, and no provision is made for the contingency of their decease. We have a right to say from the terms of the will that the testatrix meant to have the whole property kept together, in bulk, for ten years, if her three children lived so long as that, but we have not the least warrant for saying that such was her intention if one or more should die at an earlier date, for she has expressed nothing of the kind. On the contrary, the very absence of a provision for that emergency shows that her purpose was not to keep it together in that event, but let the law separate it after its normal fashion. Indeed, there is some slight indication that she meant to make that separation easy and convenient if necessity for it should occur. The will not only authorizes a sale of the real estate at the end

of ten years, for the purpose of distribution, but confers another and discretionary authority, in a separate clause, to sell in the discretion of the trustees, and so, if necessary, at an earlier date. · That would facilitate an earlier division than the final one, at least, and remove the last obstacle to its convenient accomplishment.

But even if the purpose to keep the property together in the hands of the trustees for the ten years, under all circumstances and in every emergency, could be gathered from this will, the fact alone would not destroy the tenancy in common of the beneficiaries, and prevent the severability of their interests. The difference between a joint tenancy and a tenancy in common is said to be that in the former there is unity of title and possession, and in the latter unity of possession without unity of title. The divisibility of rights does not inevitably involve a divisibility of actual possession at the moment when the rights accrue. The several right may exist, although the actual possession under it and in accordance with it is postponed.

As was said in Manice *v.* Manice, 43 N. Y. 370, a vested estate can exist in an undivided share as well as in a specific piece of land, and in Vanderpoel *v.* Loew, 112 N. Y. 180 ; 20 N. Y. State Rep. 654, the shares and interest are several, although the fund remains undivided. And so if it were possible to say, which I do not at all admit, that the will required the land and the money to remain for management and administration in the hands of the executors for ten years, in any event, that would not necessarily prevent the existence in it of a several interest to an undivided share, or force the tenants in common into the position of joint tenants. In some instances it might bear on the question, but would not be conclusive. Indeed, in Goebel *v.* Wolf, *supra*, we vested in each of the four children an undivided one fourth of the residue, subject to the trust, although it was to run for a long period, and required the property to be kept together, and, indeed, permitted the trustees to use it in carrying on the business of the deceased.

I conclude, therefore, that each of the three children took a future vested estate, which upon her death would vest in her heirs and next of kin; that the trustees held an estate for each, corresponding with her right, and that the power of alienation was suspended in each case for only a single life, or the shorter period within that life of ten years. It follows that the judgment should be affirmed, with costs.

GRAY, J. (concurring).—While I think the question presented by this appeal is by no means free from doubt, I shall vote for an affirmance of the judgment. I am, however, unable to concur in the views of Judge FINCH, which lead to that result. If an express trust was created, then it seems to me it was a single trust for the three daughters, and invalidated the testamentary disposition by suspending the absolute ownership and making the estate inalienable for ten years. I place my vote upon the ground that the disposition of the residuary estate can be upheld and effectuated by the executors under a power in trust. I think the terms employed by testatrix are not so precise and unmistakable in meaning as to preclude us from saying that one of the statutory express trusts was not created by their use. The dominant idea and the plain intention of testatrix were to keep the estate together until at the expiration of a period of ten years, if not sold before, it should be sold and converted into money and partitioned among her daughters. All the acts which she requires in the fifth and sixth clauses are to be performed by her executrices, and could be performed under a power. The important act of partitioning the estate under the sixth clause could only be done under a power. With some degree of hesitation, therefore, I express the opinion that the estate vested, at the death of testatrix, in the three daughters, subject to the execution of the powers in trust conferred upon the executrices of the will.

EARL, J. (dissenting).—We must first ascertain what the

testatrix meant by the provisions of the will above set out. As said by Judge CHURCH in Colton *v.* Fox, 67 N. Y. 348, "the intention of the testator must be ascertained, and the will construed accordingly, if practicable, and when the construction is determined, that is, when it is ascertained what disposition the testator intended to make of his property, the question then is, whether such disposition is in accordance with the law of the state."

The testatrix gives all the residue of her estate to her two daughters, whom she appoints executors " in trust for the execution of her will " that is, she gives it to them in trust for the purposes of her will, which are afterwards mentioned and defined ; and she clothes them with a discretionary power to sell, lease, mortgage and dispose of the property as they shall deem best for the interest of her estate. Then she defines the trust. The trustees are to keep the real estate insured, to provide for rebuilding in case of loss by fire, to convert all the personal estate into money, and keep the same invested in interest-bearing securities, to collect the rents and profits accruing from both real and personal estate, to pay taxes, assessments, insurance and repairs and other necessary expenses connected with the care, management and administration of the estate, and after these deductions from the income of the estate they are to divide the residue, into three equal portions, and periodically during ten years after her decease pay one-third part thereof to each of her three daughters. During the ten years they are to keep the estate and manage it as directed, and at the expiration of that time, and not until then, they are directed to sell and convert all the estate, both real and personal, into money, and distribute the same among the daughters, share and share alike.

Here there is plainly, as to the real estate, such a trust as is mentioned in and authorized by § 55 of our statute, " of Uses and Trusts." The trustees are to receive the rents and profits of the real estate, and apply them to the use of the

three daughters for a term of ten years, and there is a discretionary power to sell, mortgage or lease lands for the benefit of the legatees. Whatever else there is in these provisions of the will is incidental to these main purposes. The trustees are clothed with a general power of management for the purpose of accomplishing the trusts of the will. Therefore, under § 60, during the ten years the whole estate, both in law and equity, subject only to the execution of the trust, is vested in the trustees, and during that time the estate is absolutely inalienable, except as it may be changed from realty into personalty pursuant to the provisions of the will. It was the plain purpose of the testatrix that the whole estate should be kept entire upon a single trust for ten years. During that time there is not a separate trust for each of the daughters, but a single trust for the benefit of the three daughters. The power to sell, lease, mortgage and dispose of the real estate can be exercised at any time within the ten years, and no division of the real estate within that time can defeat that power. The insurance, taxes, assessments, repairs and other necessary expenses, are to be paid out of the gross income of the whole estate; and the balance, to be divided at the expiration of each six months, can be ascertained only after such payments. There is not the remotest hint in the language that there is to be any division among the daughters until the expiration of ten years; and separate trusts for each of the daughters cannot be set up during the ten years without defeating the scheme of the will. Suppose during the ten years the real and personal property is divided into three parts, one for each daughter, and a building upon one of the parts during that time is burned down, how is a new building to be erected, and out of what funds? Clearly not at the expense of any one daughter, but at the expense of the whole estate.

Suppose some securities set off to one daughter during the ten years prove to be worthless, upon whom will the loss fall? Clearly upon the whole estate, and not upon any

one daughter. There is to be an equal division at the end of ten years, share and share alike, between the daughters, which necessarily implies that the property is to be kept together until the end of ten years and then divided. If division be made within ten years it will be impracticable to keep the shares equal, so that at the end of ten years each will receive an equal share. If one of the daughters dies during the ten years, the whole estate will have to be kept together, so that each of the other two will receive one-third of the entire income; and if two of the daughters die within the ten years, the whole estate will still have to be managed by the trustees, so that the surviving daughter will receive one-third of the entire income, and not the income of one-third. If either of the daughters dies during the ten years, her one-third of the income will be payable to her representatives. R. S., part II. chap. 1, title 2, art 1, § 40.

The daughters during the ten years, and while the trust is in force and the whole estate, therefore, vested in the trustees, have no estate or interest in the lands, except a remainder subject to the trust estate. Sections 60, 62. And if either of the daughters die during this time her remainder will pass from her just as she leaves it, to wit, subject to the trust. Goebel *v.* Wolf, 113 N. Y. 405; 23 N. Y. State Rep. 176. It may be admitted without solving any difficulty, that the three daughters at the death of the testatrix became tenants in common of the remainder; but that tenancy during the ten years is subject to the trust. If during the term one of the daughters should convey her share in the remainder, the purchaser would take it subject to the trust; and if either of them should die during the term, her representatives would take her remainder subject to the trust, and the duty of the trustees, who during the term are joint tenants, to divide the estate at the end of the ten years between the persons then entitled to the same, would still remain.

There was, therefore, an attempt to create a trust term for ten years, during which time, if the trust is valid, the

*corpus* of the estate is tied up in the hands of the trustees and rendered inalienable, and its absolute ownership suspended. That such a disposition of property violates the statutes against perpetuities cannot be doubted. R. S., part 2, chap. 1, tit. 2, art. 1, § 15; chap. 4, tit. 4, § 1; Garvey *v.* McDevitt, 72 N. Y. 556; Smith *v.* Edwards, 88 Id. 92; Wells *v.* Wells, Id. 323; Rice *v.* Barrett, 102 Id. 161; 2 N. Y. State Rep. 4; Cruikshank *v.* Home for the Friendless, 133 Id. 337; 22 N. Y. State Rep. 738.

The court at the trial term came to the conclusion that in consequence of the power of sale given to the trustees, there was an equitable conversion of the realty into personalty at the death of the testatrix, and that, therefore, the share of each daughter in the estate was vested in her as personalty at the death of the testatrix. In this there was manifest error. During the ten years there is simply a discretionary power of sale, such as never works a conversion into personalty until the sale takes place, and there is thus an actual conversion. There is no absolute direction to sell until the end of ten years, and hence an equitable conversion cannot take place until that time. Savage *v.* Burnham, 17 N. Y. 561. But even if we should assume that the equitable conversion took place at the death of the testatrix, the result would still be the same, as then the personalty would still be held upon the same trusts mentioned in the will during the ten years, and the trust would still be indestructible, the estate inalienable and the absolute ownership thereof during the ten years suspended.

After much discussion and some vacillation and difference of opinion among judges, it was finally determined in Graff *v.* Bonnett, 31 N. Y. 9, and Campbell *v.* Foster, 35 Id. 361, that the interest of a beneficiary in a trust of personal estate for a term is inalienable like his interest in a trust of real estate, that such a trust is indestructible like a valid trust of real estate, and that consequently a valid trust of personal estate, during a trust term, suspends the absolute

ownership thereof as a valid trust of real estate suspends the alienation thereof. So, whether the estate which is the subject of this trust be regarded as real or personal, the provisions of the will creating the trust will have to be condemned as in violation of the statutes.

The attempt is now made to uphold these provisions of the will by construing them as creating three separate trusts, one for each daughter, which would terminate at her death if she died within ten years, and, therefore, could not extend beyond her life in any event, and would thus be legal. As stated above, there is not the least ground for such a construction to be found in any language used in the will. There is no arbitrary rule requiring such a construction. It is quite true that courts will, if possible, construe the language of a will so as to make its dispositions valid rather than invalid. But for the purpose of rendering the dispositions of a will valid, its plain language cannot be disregarded, and the plain intention of the testator be violated. If the construction of a will be doubtful, or if it be possible to construe language in different ways, that construction will be given which will uphold the will. But for the purpose of rendering the dispositions of a will valid, courts cannot disregard, emasculate or distort language and reconstruct the will, and thus make a will rather than construe it. If it is found from the language of a will that the testator intended to make a disposition that is really illegal, courts must condemn the disposition and hold it to be invalid; otherwise the law is thrown into confusion, the construction of wills becomes uncertain, and those who in the discharge of professional or judicial duties are called upon to construe wills will have no guides and no landmarks to go by.

A careful examination of the cases shows that there is absolutely no authority for the separation of this single trust into three separate trusts for the benefit of each of the daughters during the ten years.

In Jennings *v.* Jennings, 5 Sandf. 174, the testator gave

his real and personal estate to his wife in trust for the maintenance, clothing and education "of my children by her now born, or such as may be born in due time after my decease, and the surplus of such income to be laid up by her for these my children by her on interest invested in the purchase of United States stock, in her name as trustee to these my children, and as soon as the eldest surviving child by my present wife becomes of the age of twenty-one years the whole of the property to be fairly appraised and valued, and his or her equal share of the property apportioned, and if required paid to him or her;" and in like manner the same course was to be pursued in respect to the rest of the surviving children. There were four children, and the disposition was held to be invalid. The learned judge writing the opinion said: "The property is to be kept entire for the mutual and common benefit of the four children until the eldest surviving child becomes of age ; not for the equal benefit of each child, share and share alike, but for the support of all as their varying ages and circumstances should require. * * * There can be no severance or division of this property, in fact, or in theory, until the eldest surviving child attains his or her majority. It must remain entire until that event, as well by the express terms of the will, as by the necessary effect of the provisions for the maintenance, clothing and education of all the four children who were beneficiaries of the trust. Now suppose the two eldest, Josephine and Francis, were to die before they became twenty-one years of age, the trust would continue for the benefit of the two youngest children, who would thereupon be presumptively entitled to the whole estate on their respectively becoming of age. But until one of them attained that age there could be no severance or apportionment of the property. Thus two lives would have already elapsed, during which the power of alienation was suspended, and it must remain suspended until at least one more life lapses, or the existing minority of one of the survivors terminates.

So if the three eldest should die under age, the trust, it would seem, must still continue during the minority of the youngest child." Again: "Independent of the effect attributed to the bequest of the income in keeping the estate entire and in mass during the minority of the children, the same consequences may be deduced from the clause relative to the apportionment.

" When the eldest survivor became of age the whole property, except that at Swedesborough, was to be appraised, and such survivor's equal share apportioned to him. It would still remain in the trust, if she did not require its transfer, but it would nevertheless be alienable. But the residue must remain in trust inalienable, to provide for the future apportionments. Now there is this insuperable obstacle to treating the estate as divided into equal fourth parts at the testator's death, or the residue into equal third parts after the eldest, if she survived, had received her share. The appraisement was in each instance to be made at the period when the respective children became of age, and the apportionment was to be made upon the value then ascertained, and not upon the value at the testator's death; or in respect of the three youngest, on the value when the eldest became of age. To illustrate this, we will suppose that the testator's personal property consisted of four bonds and mortgages of $6,000 each. In that case, if each child were entitled at his death to an equal fourth, and there were no other clause in the will preventing a severance into equal shares, it would be the duty of the trustee at once to set apart one bond and mortgage to each, subject to a contribution from each to the support of the widow. Then suppose that the bond and mortgage allotted by the trustee to the eldest had turned out to be worthless. No one will pretend that when she became twenty-one she would be compelled to receive the worthless security, as and for her share of the testator's estate, which by the terms of the will was to be then finally appraised and valued, and ' appor-

tioned' to her. Again, after the eldest child on becoming of age shall have received her share on the appraisal then made, both the real estate and the personal property may greatly depreciate, and when the next child becomes twenty-one a new appraisal must be made of what is left, and her third of that residue may not be more than half as much as the eldest received. Such valuation is also subject to the further contingency of losses and dilapidations of the remaining estate. Without pursuing these illustrations, we think enough has been said to show that this estate cannot be deemed to have been given in equal fourths to the four children at the testator's death, and that there was no gift of separate and distinct shares to each, or distinct trusts in respect of each; but that the estate was to be kept entire and as a whole in the hands of the trustee until the respective periods arrived which were designated for the successive valuations and apportionments. Indeed, the will gives no part of capital of the estate to any of the children except upon such apportionment; and it seems that neither of them took a vested interest at the testator's death, either absolute or defeasible." The views thus expressed are so opposite to this case that I have deemed these extended quotations not inappropriate.

In Hone *v.* Van Schaick, 7 Paige, 221, the testator devised and bequeathed to his wife the use of his mansion house for life, together with his furniture, books, etc., and an annuity of $3600, in lieu of dower, and then devised and bequeathed all his estate, real and personal, to his executors in trust for the purposes of his will, and directed them to convert the personal estate into cash, and invest the same in bonds and mortgages or stocks, and to sell a part of his real estate and invest the proceeds thereof in the same manner, and to lease the residue of the real estate so that the interest and income of the whole property might form a general fund, out of which he directed his executors to pay the annuity to the widow, and to divide the residue of that fund, as it should

accrue, equally among his seven children and the representatives of his two deceased children, quarterly, for the term of twenty-one years from the date of the will; at the expiration of which time, or as soon thereafter as the executors should deem it discreet to do so, he directed them to divide the real and personal estate among his heirs or their legal representatives, such representatives to take such share only as their immediate ancestor would have been entitled to if living, and the children of the testator to take life estates merely, with the remainders in fee to their descendants or those who should then be heirs of the testator; and it was held that the devise and bequest in trust to the executors, and the several trust estates, and interests depending thereon, and the several remainders limited upon the trust term were void. There, as here, it was claimed that the estate could be divided into separate trusts, but the chancellor held that there was one trust of the entire estate, and that it unduly suspended the power of alienation.

In Coster *v.* Lorillard, 14 Wend. 265, a testator devised and bequeathed all his real and personal estate to his brother, and to twelve nephews and nieces, in trust to pay over and divide the rents and profits of his real estate to and among the same twelve nephews and nieces, during their natural lives, and to the survivors and survivor of them equally, to be divided between them, or such of them as should from time to time be living, share and share alike; and the trust was held void. It was decided that there was a devise in trust of the entire estate to receive the rents and income thereof, and to distribute them among several *cestui que trusts,* and that it could not be considered as a separate devise of the share of each *cestui que trust,* so as to protect the share of each as a tenant in common during his own life; and that as the trust was to endure for a longer period than two lives in being at the death of the testator, the whole devise in trust was void.

In Converse *v.* Kellogg, 7 Barb. 590, the testator by his

will, after sundry bequests to his wife, children and others devised as follows : " I give and bequeath all the rest and residue of my estate, after payment of my debts, funeral charges and legacies above mentioned, unto my said children (naming them), their heirs and assigns forever, equally to be divided between them, share and share alike, and to the descendants of such of my children as shall have died, in equal portions, that is such descendants to take the same to which their ancestor would have been entitled if living ; but no division to be made until ten years after the death of my said wife ; " and it was held that the condition annexed to the devise, that no division should be made until ten years after the death of the widow, was void as to the personal estate, as suspending the absolute ownership thereof for a period beyond the time prescribed by the statute. In that case Judge Allen, writing the opinion, said : " To constitute a perfect title to real estate there must be the union of actual possession, the right of possession and the right of property. Can the title to personal property be said to be perfect, or the ownership ' absolute ' while one person is the general owner and another has the possession and the right of possession ? In this case the executors had a qualified property in the personal estate, and the right to the possession for the purposes of the will, and if the condition under consideration is valid until the final division among the devisees, while the latter were the general owners and entitled to the ultimate possession, the ownership of the devisees was far from absolute. The right of the executors to the possession, and the restraint upon division and actual possession, was an incumbrance upon the ownership of the devisees. Owner-ship is the right by which a thing belongs to an individual to the exclusion of all other persons. In this case if the condition in restraint of division is valid, there are two classes of owners, one general, the other special, neither having the absolute ownership. I think by the clause in question the absolute ownership of the personal estate was suspended for

a term longer than during the continuance of two lives in being at the death of the testator, and that such condition was void."

In this case, by the plain language of the will, the possession of the property is to remain in the trustees for ten years, and during that time they are to be the general owners thereof with the right of possession and the right to control and manage the same, and there is to be no division thereof until the expiration of ten years.

In Colton *v.* Fox, *supra*, the will of Ruben Parsons, after various specific legacies and devises, gave the residue of his estate, real and personal, to his executors in trust, to pay the income and profits to two brothers and two sisters of the testator in equal proportions during their joint lives, and after their "several deaths," to divide the residuary estate equally among their children. The provision closed thus: "In case either of my said brothers or sisters shall die, leaving the others surviving, then the income herein intended for the one or the other so dying shall be paid to the issue or the representative of the one or the other so dying." In an action for the construction of the will, it was held that the design of the testator was that the *corpus* of the estate should remain undivided in the hands of the executors until the decease of all of the brothers and the sister named: that the interests of the children of the respective brothers and sisters named did not vest in them at the death of the testator, but was future, and contingent upon their surviving the parent, and that the provision was in contravention of the statutes against perpetuity, and so void. Chief Judge CHURCH, writing the opinion, said, "Here, in the first place, the title is in express terms vested in the executors, and there is no provision for paying any part of the *corpus* until the death of the four beneficiaries; in fact, as we have seen, the provisions of the will repel any such idea. The testator placed the title of this portion of his property in his executors, and directed that it should remain there until the death

of four persons, with a limitation over to such of their children as should be living."

While these cases are not exactly like the one under consideration, they bear a strong analogy to it, and the principles which controlled their decision are applicable to it.

In Mason v. Mason's Executors, 2 Sandf. Ch. 432; De Peyster v. Clendining, 8 Paige, 295; S. C. 26 Wend. 21; Savage v. Burnham, supra; Stevenson v. Lesley, 70 N. Y. 512; Monarque v. Monarque, 80 Id. 320; and Wells v. Wells, 88 Id. 323, it was held in each case, upon language somewhat doubtful, that several trusts were constituted, instead of a single trust of the entire estate disposed of. In such case the court reached the conclusion that there were several trusts from particular phraseology contained in the will, showing that it was the intention of the testator that the trust estate was to be divided into shares, and each share held upon a separate trust; and in each case there was language showing that the testator intended that each beneficiary should have the income of the separate share set apart for his benefit. Here there is no such phraseology in this will. There is absolutely nothing indicating that the *corpus* of the estate is to be divided into shares prior to the expiration of the ten years. The trust is to continue during the entire ten years, and the whole estate during that time is to be held as an entirety, and at the end of that time the trustees will still have a trust duty to perform with the entire estate, which cannot be performed earlier, to wit, to convert the estate into money, and to divide and distribute it among the three daughters.

The case of Tucker v. Bishop, 16 N. Y. 402, is cited as an authority to establish the validity of this trust. It is not easy to reconcile some of the views expressed in the opinion in that case with later decisions in this court. There a testator bequeathed his residuary personal estate to his executors in trust to invest the same, declaring that one-half, principal and interest, should be for the benefit of the

children of a grandson, and the other half for the benefit of the children of a granddaughter, and to be paid over in the following manner: One-half of the income to be applied annually for the benefit of the children of each grandchild, respectively; and whenever either of the children of the grandson should come of age, to pay over to that child his or her proportion of the one-half of said principal; with the same provision for the children of the granddaughter; and it was held, first, that each of the grandchildren living at the death of the testator took an immediate vested interest in an equal share of the fund bequeathed to the children of his parent, subject to be diminished in quantity by the birth of subsequent children before the first child of the class became of age; second, that if the uncertainty of the quantity of the interest of the children in being at the death of the testator would suspend the power of alienation, such suspension could only endure for one life in being at the creation of the estate, that of the parent; and third, that, therefore, the will involved no illegal suspension of the absolute ownership or power of alienation. The will disposed only of personal estate, and the learned judge who spoke for the court was of opinion that the great-grandchildren took immediate vested interests therein, and he regarded their interests as absolute legacies payable at a future time, and that, therefore, there was no suspension of the absolute power of alienation of the share of each great-grandchild. But in his reasoning he seemed to ignore the fact that there was a trust, and that the legal title to the personal property was thereby vested in trustees during the continuance of the trust, and that during that time the property was absolutely inalienable and the trust indestructible. That decision was made before it had become finally settled that the interest of beneficiaries in a trust of personal estate is inalienable, and some of the views expressed by the learned judge are in conflict with the law as finally settled in the cases of Graff *v.* Bonnett and Campbell *v.* Foster,

above cited. But the decision may rest upon the same principle which governed the cases last above cited. Whenever either of his great grandchildren became of age it is provided that his or her proportion of the principal held in trust should be paid to such person. It may thus be said that it was contemplated by the testator that his estate was to be divided into shares, and to be held in shares, and that as fast as each of his great-grandchildren came of age the share was to be paid over; and so each share of any great-grandchild would be released from the trust when he or she became of age, or died under age. So in that case nothing is decided in conflict with the views we have expressed. In Everitt *v.* Everitt, 29 N. Y. 39, a testator, by his will made in 1855, gave to his two elder children legacies of $500 each, and then devised and bequeathed all his estate, real and personal, to his executors in trust for the purposes of his will, and directed that it should be converted (except so far as it should be needed to pay legacies) into money, and be invested upon bond and mortgage. After giving certain others small legacies, by the tenth clause of his will, he directed that the residue and remainder of the funds which should come to the hands of his executors in their capacity as trustees, and the accumulations thereof, should be held, used and managed by such executors for the benefit of such of his three younger children as should be living at the time of his decease; and if the children should have attained the age of twenty-one years at the time of his decease, then his executors were to pay over the remainder of the funds, and all the accumulations thereon to them, his three younger children, or to the survivor of them, if one should be then dead, in equal proportions, share and share alike; and if there should be but one survivor at the time of his decease, then the executors were to pay over the remainder of the funds, and all the accumulations thereon, to his three younger children, or to the survivors of them (if one of them should then be dead), in equal proportions, share and share alike;

and if there should be but one survivor at the time of his decease, then the executors were to pay over to such survivor the whole of such funds, and the accumulations thereon. He then directed that if he should depart this life while any of the three children should be under the age of twenty-one years, the executors should hold, use and manage the residue and remainder of the trust funds as before provided, until all of his said three younger children, or the survivors or survivor of them, should become of age; and then he directed his executors to pay over such funds and the accumulations to them, or to the survivors of them, in the same manner and in the same proportions as before provided in case of his not dying until after the youngest one living at the time of his decease should become of age. He died before either of the three children attained the age of twenty-one years; and it was held that the bequest contained in the tenth clause of the will constituted the legatees tenants in common; that they took distributively and not jointly; that the bequest of the residue was not illegal or void, as suspending the power of alienation beyond the time limited in the statute; that the interest in the fund vested in the legatees on the death of the testator, though the fund was not payable to them until the happening of the event mentioned, viz.: the youngest attaining her majority; that the trust, if valid, did not suspend the absolute ownership of either of the three shares of the residue for any period beyond the life of the daughter to whom it was given; that upon the death of the first of the three daughters who should die without issue, her share would go to the survivors absolutely; and that upon the death of the second one who should die without issue, her proper share would go to the survivor; but that her part of the accrued portion, if not aliened, would go to her personal representatives, and would be thus taken out of the scope of the trust; that the accrued shares, if any of the legatees should die without issue before they all arrived of age, would not be subject to any

farther devolution by survivorship, but would vest absolutely in the survivors; that the provisions of the will were a valid and effectual disposition of the testator's estate, and that the three minor children were entitled to the residue under the tenth clause of the will. Chief Judge DENIO, in his opinion, first considers the case without regard to the trust, and much of his discussion relates to what would be the proper construction and legal effect of the will if the trust were stricken therefrom, and among other things he states that " the particular provisions of this will show that the gifts were distributive and several and not joint." He then gives his reasons for this conclusion, commenting upon the particular provisions of the will. After holding that the dispositions of the will were valid, if the trusts were expunged therefrom, and holding that if the trusts were invalid they should be expunged therefrom and disregarded, he holds that the trusts were legal and operative. This conclusion he reaches from the particular language used in the will, showing that it was intended that the legatees should take distributively, and he holds that there was no illegal suspension of alienation or ownership. His construction of the language of the will is summed up as follows: " The substance of the disposition is that the whole residue is to be held by and be subject to the management of the trustees until the youngest child shall come of age, unless any of them shall die under age; but in that event, the share of the one so dying under age is to be separated from the trust estate, and be paid immediately to the issue of the deceased child, if she shall have left any, and if not, to her surviving sister or sisters." The language of that will is so entirely dissimilar to the language of this, that it can in no sense be considered authority for the construction now contended for. This case differs from all the cases cited in opposition to the views I have expressed, in that here it was the plain and manifest intention of the testatrix that her whole estate should be held

as an entirety upon a single trust for the period of ten years, and by no rule of construction can that intention be ignored.

I have therefore reached the conclusion that this will violates our statutes against perpetuities, and that, hence, the judgment below should be reversed and a new trial granted, costs to abide the event.

FINCH and GRAY, JJ., read for affirmance of judgment, with costs; RUGER, Ch. J., and ANDREWS, J. concur.

EARL, J. reads for reversal; PECKHAM and O'BBRIEN, JJ. concur.